UNITED STATES OF AMERICA, V. JOHN A. FOREMAN.

1. APPEAL. The Organic Act provides that an appeal lies from all final decisions of the district court of this territory, and an appeal, therefore, lies from a final decision of a district court, rendered in the exercise of the concurrent jurisdiction with the court of claims, within certain limits, bestowed upon district and circuit courts of the United States to hear and determine claims against the government, and which jurisdiction is, by the Organic Act, conferred upon the district courts of this territory.

2. SUIT TO RECOVER PURCHASE MONEY FOR LAND—*Application to Secretary, with Relinquishment, and Surrender of Duplicate Receipt, not Necessary Pre-Requisite.* It is not necessary that a party bringing suit, in a district court of this territory, exercising the jurisdiction of a circuit court of the United States, under the act of congress of March 3, 1887, to hear and determine claims against the government, such suit being brought for the recovery of money paid for land on which the entry was erroneously allowed and afterwards cancelled, should show that he had surrendered to the secretary of the interior his duplicate receipt, and had executed a relinquishment of all claims to the land, as provided by the second section of the act of congress of June 16, 1880, authorizing the secretary of the interior to make repayment of moneys received on entries erroneously allowed. The remedies granted by these two statutes are each distinct and separate from the other, and it is not necessary to exhaust the remedy granted by the first act in order to pursue the remedy granted by the later one.

*Error from the District Court of Canadian County.*

Action by John A. Foreman, in the district court of Canadian county, to recover the sum of $1,500 paid by him on making his final proof upon a tract of government land, which was proved up by him for townsite purposes under § 22 of the Organic Act. Judgment was had for plaintiff, from which defendant appeals. Affirmed.

*C. R. Brooks, United States Attorney, T. F. Mc-Mechan* and *Roy Hoffman,* for plaintiff in error.

*F. E. Gillett* and *M. D. Libby,* for defendant in error.

The opinion of the court was delivered by

BIERER, J.: The plaintiff filed his petition in the

district court of Canadian county on. August 22, 1894, to recover judgment against the United States in the sum of $1,500. The petition, in substance, states: That on the 24th day of April, 1889, the plaintiff was a qualified entryman under the homestead laws of the United States, and that he on that day made homestead entry on the northwest quarter of section 9, township 12 north, range 7, west of the Indian meridian. That afterwards, without plaintiff's knowledge or consent, the Oklahoma Homestead & Town company, a corporation, entered upon this tract of land and caused large numbers of townsite settlers to enter upon and occupy the land and the same was used for townsite purposes. That on the 22d day of May, 1890, the congress of the United States passed the Organic Act for the Territory of Oklahoma, and, by § 22, provided that in any case where lands in the Territory of Oklahoma, which may be occupied and filed on as a homestead by a person who is entitled to perfect title thereto under the laws, are required for townsite purposes, it shall be lawful for such person to apply to the secretary of the interior to purchase the lands at the sum of $10 per acre. That on August 9, 1890, under this provision of the law, the plaintiff did apply for and purchase this tract of land under the act mentioned, and did the things therein required, and in full compliance with the rules of the department of the interior, and paid to the register and receiver of the local land office the sum of $1,500, the same being for one hundred and fifty acres of said land, ten acres thereof being reserved, as by law provided, for public parks. That afterwards the commissioner of the general land office approved the plaintiff's entry, authorizing his purchase of the land, and the local officers issued to the plaintiff a final cash certificate of the purchase of the

same.   That the $1,500 was covered into the United States treasury by a deposit thereof made in the United States depository at Arkansas City, Kansas.   That the secretary of the interior, upon consideration of the case, made an order to the commissioner of the general land office to cancel plaintiff's entry, because plaintiff had voluntarily entered into a lease with the Oklahoma Homestead & Town company, by the terms of which he parted with all control of his claim, agreeing to transfer complete title when title was perfected in him, and because the plaintiff had thereby disqualified himself from entering these lands; this finding and decision of the secretary being made upon the proof of the plaintiff, submitted with his appilcation to purchase the land, so that the case was one wherein there was no fraud, but in which the entry was erroneously allowed.   That after the cancellation of plaintiff's right and title to the land, the same was awarded to the townsite settlers thereon, and patent issued and delivered to the townsite trustees, in trust for the use and benefit of said townsite settlers. That after the plaintiff's right and interest in and to the land had, by the secretary of the interior, been fully barred and title awarded to the townsite settlers, plaintiff made application to the secretary of the interior for the return of the $1,500 paid by him as the purchase price of the land, and at the time of making the demand for the return of the purchase money tendered the defendant the return of the duplicate receipt issued to him, together with a proper relinquishment of all claims to said land, as shown by the acknowledged relinquishment on the back of said duplicate receipt, attached to the petition as an exhibit thereto, but that the application to refund to plaintiff said money was refused and plaintiff denied the right to receive or recover back from the

defendant the sum of $1,500, and that the retention of said money is unjust, illegal and without consideration, and that plaintiff is entitled to recover the same. Plaintiff then prays judgment against the defendant for the sum of $1,500, together with interest, and costs of the action·

There is attached to the petition a full copy of the decision of the secretary of the interior in the case, and a certificate of the register and receiver of the local land office that Foreman had purchased the land for townsite purposes, except ten acres reserved for parks. Also the receipt of the receiver for the money paid for one hundred and fifty acres of the land described at $10 per acre. Also the relinquishment referred to, which is as follows:

"Territory of Oklahoma, ⎱ ss.
    County of Canadian. ⎰

"I hereby relinquish to the government of the United States all right, title and interest I may have to the within tract of land by reason of the within rec't.

"Executed and acknowledged before me, W. A. Maurer, this 1st day of August, 1893.

(Notary Seal)    "W. A. MAURER, Notary Public.

"My Commission expires Feb. 11, 1897."

"Oklahoma Territory, ⎱ ss.
    Canadian County. ⎰

"I hereby certify that this instrument was filed for record in my office at 9 o'clock A. M., May 29, 1891, and is duly recorded in book 9, page 25.

"PARKER S. SMITH, Register of Deeds.
"By F. W. VAN NESS, Deputy."

To this petition the defendant demurred on the grounds,

1. That plaintiff's petition does not state facts sufficient to constitute a cause of action.

2. Because the court had no jurisdiction of the action, for the reason that the plaintiff was first required

to present, in the manner the law requires and directs, his claim against the defendant to the secretary of the interior for payment.

3.   Because the plaintiff's petition does not allege facts sufficient to show that he had complied with the law and the rules and regulations of the department of the interior in making application and demand for the payment of the claim sued on.

4.   Because the plaintiff has no cause of action against the defendant until his claim is properly presented to, and payment demanded of the secretary of the interior, and the same has been refused by the secretary.

This demurrer was, in an extensive and comprehensive opinion of the court, which is set out in the record, overruled.

The United States attorney, for the government, then filed his answer in general denial of each and every paragraph of the petition, and specifically denying that the plaintiff had made application to the secretary of the interior for the return of this money; and denying that the plaintiff, at the time he made application for the return of the money, or at any time, tendered to the defendant a return of the duplicate receipt issued to him, together with a complete or proper relinquishment of all right, title, interest or claim in or to the land through the issuance to the plaintiff of the duplicate receipt; and denying that the application for the return of the money had been refused; and specifically alleging that if the money was withheld from the plaintiff it was for the reason that he had not made proper application or legal demand of the secretary of the interior, or commissioner of the general land office for the same, as required by § 2362 Revised Statutes and the act of congress approved June 16, 1880.

16 —v.

There was then filed in the case an agreed statement of facts, as follows:

"John A Foreman, Plaintiff, v. United States of America, Defendant.   Agreed statement of facts.

"James Thompson, Plaintiff, v. United States of America, Defendant.   Agreed statement of facts.

"Thomas Jensen, Plaintiff, v. United States of America, Defendant.   Agreed statement of facts.

"It is here stipulated and agreed by and between the plaintiff and the defendant, in each of the above entitled cases, that the material allegations of the plaintiffs' petition, except the allegation of demand in each of said cases, are true, and the allegations thereof are confessed, except it is not admitted nor confessed that any demand was made upon the defendant in either of the said cases for a return of the money mentioned in said several petitions to the plaintiffs under the rules of the department of the interior.

"Upon the question of demand for the return of the said money, no proof is submitted in either of said cases or agreed upon, but if the court holds that a demand is necessary, before said actions would lie, then said actions are to be dismissed by the court without prejudice; and if the court holds that such demand was not necessary, then the court is to render judgment as the pleadings and confessed facts warrant.

"GILLETT & LIBBY,<br>
"Attorneys for Foreman & Thompson.<br>
"JOHN I. DILLE,<br>
"Attorney for Thos. Jensen.<br>
"ROY HOFFMAN,<br>
"Assistant Attorney for United States."

On the trial of the case the court entered its findings and opinion, and rendered judgment in favor of the plaintiff for the sum of $1,500.   From this judgment the government appeals.

The defendant in error, Foreman, has entered a

motion to dismiss the appeal in this case, because, as he contends, no appeal lies from the district court to the supreme court of the territory in this character of a case.

This action was brought under the provisions of the act of congress of March 3, 1887, (vol. 1, Sup. R. S. p. 559,) the provisions of which, material to this question, are as follows:

"That the court of claims shall have jurisdiction to hear and determine the following matters:

"First. All claims founded upon the constitution of the United States or any law of congress, except for pensions, or upon any regulation of an executive department, or upon any contract, expressed or implied, with the government of the United States, or for damages, liquidated or unliquidated, in cases not sounding in tort, in respect to which claims the party would be entitled to redress against the United States either in court of law, equity, or admiralty, if the United States were suable.

    \*      \*      \*      \*      \*      \*

"SEC. 2. That the district courts of the United States shall have concurrent jurisdiction with the court of claims as to all matters named in the preceding section where the amount of the claim does not exceed one thousand dollars, and the circuit court of the United States shall have concurrent jurisdiction in all cases where the amount of such claims exceeds one thousand dollars and does not exceed ten thousand dollars. All causes brought and tried under the provisions of this act shall be tried by the court without a jury."

A part of § 3 provides:

"The judgment of said court or of the supreme court of the United States, to which an appeal shall lie, as in other cases, as to the amount due, shall be binding and conclusive upon the parties. The payment of such amount so found due by the court shall discharge such obligation.

"SEC. 4. That the jurisdiction of the respective courts of the United States proceeding under this act, including the right of exception and appeal, shall be governed by the law now in force, in so far as the same is applicable and not inconsistent with the provisions of this act; and the course of procedure shall be in accordance with the established rules of said respective courts, and of such additions and modifications thereof as said courts may adopt.

"SEC. 9. That the plaintiff or the United States, in any suit brought under the provisions of this act, shall have the same rights of appeal or writ of error as are now reserved in the statutes of the United States in that behalf made, and upon the conditions and limitations therein contained."

A part of § 9 of the Organic Act of this territory provides:

"And each of said district courts shall have and exercise, exclusive of any court heretofore established, the same jurisdiction in all cases arising under the constitution and laws of the United States as is vested in the circuit and district courts of the United States."

Another portion of the same section provides:

"Writs of error, bills of exception, and appeals shall be allowed in all cases from final decisions of said district courts, to the supreme court under such regulations as may be prescribed by law."

It is claimed that the words "in that behalf made" contained in § 9 of the act of congress of March 3, 1897, referrered to § § 707 and 708 of the Revised Statutes of the United States, regulating appeals from the court of claims to the supreme court of the United States. And it is claimed that the district court of Canadian county when vested with the court of claims jurisdiction, must follow, in the allowance of an appeal and otherwise, the power and authority conferred upon the court of claims,

and that the appeal must be taken to the same appellate tribunal as from the court of claims; and that this contention is supported by the decision of the supreme court of the United States in the case of the *United States v. Davis*, 131 U. S. 31. We do not think that case supports this contention. In that case it was claimed that there was no appeal to the supreme court of the United States, because the judgment appealed from was rendered by a district court of the United States, and that as, under the act of February 16, 1875, no appeal would lie from the circuit or district courts of the United States unless the matter in dispute exceeded $5,000, exclusive of costs, and as the judgment in the case then presented was for $25 and costs, the appeal could not be taken. Upon this contention the supreme court held that as the object of the act of March 3, 1887, was "to enable the district and circuit courts to exercise concurrent jurisdiction with the court of claims in respect to suits against the United States, as therein provided, in our judgment the right of appeal reserved to the government 'in the statutes of the United States in that behalf made,' before the enactment of this act, was the right of appeal reserved in the statutes relating to the court of claims, and as that right could be exercised by the United States in the instance of any judgment of the court of claims adverse to the United States, it follows that the same right can be exercised by the United States in any case of the prosecution of a claim in the district or circuit courts of the United States under said act," and the motion was overruled.

But the appeal which is taken in this case does not depend upon any of the provisions of the act of March 3, 1887, granting appeals from the court of claims or from the circuit or district courts of the United States.

Nor is it necessary for us to answer the suggestion that the appeal of the government, if it has one, should have been taken to the supreme court of the United States. We are not here to determine whether an appeal lies in behalf of the government from this judgment to the supreme court of the United States. We have no way whatever of controlling an appeal or any application for an appeal, should one be made, from the district court to that court, and it would be useless for us to discuss that proposition. The only question we have to determine is whether an appeal lies, under the law, from this judgment to this court. That the determination in favor of Foreman was a final decision will certainly not be controverted. The plaintiff brought his action as a suit in court, in a court that he contended, and appropriately so, had jurisdiction to hear and determine it. The court was asked to make a determination, it did make a determination of the rights of the parties, and that determination was a final decision.

The Organic Act, as we have seen, provides that appeals shall be allowed "in all cases from the final decisions of said district courts to the supreme court," and this language is too plain and comprehensive to admit of any limitation whatever. It makes no difference what jurisdiction the district court may be exercising, or whether that jurisdiction may be exercised, as it may be, in determining cases of minor importance, ordinarily determined by justice or police courts, or whether in passing upon claims against the government, as in the present case, or whether in the determination of the highest rights of the life, liberty or property of the citizen. In all, and in every case, whatever it may be, from the final decision thereof, an appeal lies to this court. The motion is therefore overruled.

The only question raised for our consideration on the merits of the case is as to whether or not the plaintiff was required, before he could bring this suit, to surrender his receipt received for the payment of his money on the purchase of the land, and execute a proper relinquishment of his claim to the land, as provided by the rules of the commissioner of the general land office made on this subject. The United States attorney contends that it was necessary for Foreman to present his application to the government, with a surrender of his duplicate receipt, and a relinquishment executed as required by the rules on the subject, established by the commissioner of the general land office, before he was entitled to sue the government for the return of this money.

There is no objection made to the right of the United States attorney to have this question considered by this court on the record as it is presented; and as it appears that the record seems to have been considered by the parties, in the court below, sufficient to fairly present this question, and the court, in its findings, conclusions and opinion, both upon the demurrer and in deciding the merits of the case, did consider it, we will pass upon it squarely here, although it might otherwise appear as if the mere question as to the necessity of a "demand for the return of said money," as the issue, by the agreed statement of facts, would appear to be limited to, was being carried to an unusual extent in the consideration of this case. We do not feel at liberty, however, to confine a litigant to such questions only as might be considered as having been presented by the record, interpreted by the ordinary use of language, when the action of all the parties, and the decision of the court, shows that the language used was considered to have a much broader

meaning. And when, as in this case, the question as to the necessity of making a demand for the return of the money was construed to raise the question as to whether or not it was necessary to surrender the certificate issued by the government, and make a relinquishment in a prescribed form, the case must be treated and considered by the appellate court on the same theory, and as raising the same questions as were determined by the trial court, when that can be ascertained from the record, as it can in this case.

The contention of the United States attorney is based upon the provisions of §§ 2, 3 and 4, of the act of congress of June 16, 1880, (Supplement R. S. U. S. vol. 1, page 300), and the rules and regulations of the commissioner of the general land office, and he has filed an able brief in support of this contention.

The attorneys for the defendant in error have submitted the case without a brief, and ask us to consider the opinions of the trial court, as they appear in the record, as presenting their case.

The sections of the act of June 16, 1880, referred to, are as follows:

"SEC. 2. In all cases where homestead or timber culture or desert land entries or other entries of public lands have heretofore or shall hereafter be canceled for conflict, or where, from any cause, the entry has been erroneously allowed and cannot be confirmed, the secretary of the interior shall cause to be repaid to the person who made such entry, or to his heirs or assigns, the fees and commissions, amount of purchase money, and excesses paid upon the same upon the surrender of the duplicate receipt and the execution of a proper relinquishment of all claims to said land, whenever such entry shall have been duly canceled by the commissioner of the general land office.

"And in all cases where parties have paid double minimum price for land which has afterward been found not to be within the limits of a railroad land grant, the excess of one dollar and twenty-five cents per acre shall in like manner be repaid to the purchaser thereof, or to his heirs or assigns.

"Sec. 3.   The secretary of the interior is authorized to make the payments herein provided for, out of any money in the treasury not otherwise appropriated.

"Sec. 4.   The commissioner of the general land office shall make all necessary rules, and issue all necessary instructions, to carry the provisions of this act into effect.

"And for the repayment of the purchase money and fees herein provided for, the secretary of the interior shall draw his warrant on the treasury and the same shall be paid without regard to the date of the cancellation of the entries."

Upon this legislation, and in pursuance thereof, the commissioner of the general land office, on August 6, 1880, promulgated certain rules and regulations for the carrying of the provisions of this act into effect.   The rules in part, and as considered applicable to this case by this court, are as follows:

"Rule 4.   Where patent has not been issued, the duplicate receipt must be surrendered.   The applicant must also make affidavit that he has not transferred or otherwise encumbered the title to the land, and that said title has not become a matter of record.

"Rule 5.   Where the title has become a matter of record, and in all cases where patent has issued, a duly executed deed, relinquishing to the United States all right and claim to the land under the entry or patent, must accompany the application.   This deed must be duly recorded, and a certificate must also be produced from the proper recording officer where the land is situated showing that said deed is so recorded, and that the records of his office do not exhibit any other conveyance or encumbrance of the title to the land."

The court below, in deciding the case, held that these rules were beyond the scope of the authority given by the statute to the commissioner of the general land office, as they required more of the applicant for the return of the money than the statute contemplated. Also, that this act of 1880, contemplated the return by the secretary of moneys which had been properly turned into the United States treasury from the receipts from sales of lands, and as § 22 of the Organic Act provided that moneys received from the sale of homestead lands for townsite purposes shall be by the secretary "paid over to the proper authorities of the municipalities, when organized, to be used by them for school purposes only," and as the secretary had no authority to turn this money into the United States treasury, this was not one of the cases coming within the purview of the act of 1880, authorizing and requiring the secretary to make repayment of moneys received on erroneous entries, and therefore it was unnecessary for Foreman to make any return of the certificate, or relinquishment of his right to the land, or application for the return of this money.

The court also held that as this money was paid to the government by Foreman for the purchase price of the land, and the government declined to patent the land to him, and canceled his entry and transferred the land to townsite trustees for the townsite settlers, there arose an implied promise by the government to return this money to Foreman; and the money not having been returned, under the provisions of the act of March 3, 1887, Foreman could maintain this action without a surrender of the receipts, or making a relinquishment.

It seems to us that if the conclusion of the court upon the last proposition is correct, it is wholly unnecessary to

pass upon the other questions; for if, as decided in the third conclusion, it was unnecessary to make an application to the secretary of the interior for the repayment of the purchase money, accompanied by a surrender of the final receipt, and a relinquishment of all claims to the land, before instituting this suit, then it was, and is, wholly immaterial whether or not the regulations promulgated by the commissioner of the general land office governing applications for the repayment of purchase money were reasonable or unreasonable regulations, as was also the question as to whether or not entries of land under § 22 of the Organic Act was one which came within the purview of the act of June 16, 1880, authorizing the secretary to make repayment of the purchase money on the cancellation of the entry. And as we entertain the same view as was announced by the trial court on the third conclusion, we hold an examination of the other questions unnecessary, and will confine our review of the case to the last proposition, deeming it time enough to pass upon the others when it may become necessary.

The contention of the government is based entirely on the provisions of the act of congress of June 16, 1880, referred to; and while it is not contended that in this class of cases the remedy is entirely by application to the secretary for the return of the money, so as to exclude the plaintiff from bringing his suit under the act of 1887, yet that when bringing suit under the act of 1887 in the circuit court, he must allege compliance with the act of 1880, by filing his relinquishment in the form prescribed, with return of his duplicate receipt.

These two statutes, it will be observed, are wholly remedial, and each one separate and distinct from the

other.   Neither one of them is a declaration or a grant of right, and neither one is in any way made to depend upon the other.   They relate wholly to the remedy which a party having a right may pursue in one or the other, or, if he choose, one after the other of the two methods prescribed.

Now the question as to whether or not the plaintiff is entitled to the return of this money is a question of right, and that is separate and distinct from the question as to what remedy he shall pursue; and the question as to whether or not he has a right to the return of the money is not determined by either one of these statutes, for neither of them is even declaratory upon this subject, but pertain wholly to the method to be pursued, that is, the action which he shall take to procure the enforcement of his right.

Is there a right to the return of this money vested in the plaintiff by any form of procedure?  The facts pertaining to this question are that he made application to purchase this tract of land from the government, produced his evidence in support of that application, and which was by the officers of the government deemed sufficient, his entry allowed and the purchase price of the land received.   Subsequently, on consideration of the superior officer, the secretary of the interior, charged with the duty of the disposal of public lands, it was determined that the facts which he originally presented were not sufficient to entitle him to this land, and a transfer of the land to him by patent was refused, and the land conveyed to others.   The plaintiff certainly was entitled either to the land or the return of his money. The government had no right to take the plaintiff's money and give him nothing therefor.   He was practicing no fraud, at least so far as it appears in this case,

under which the retention of the money could be claimed as a forfeiture because of the fraud. The government, then, was legally, as well as in morals and good conscience, bound to either grant the plaintiff's application and give him complete title to the land, or else, on the refusal of title and the cancellation of his certificate of purchase, to return him the money he had paid for the land, and on its failure to pay the money he had a right of action to recover it, and this right depended upon no statute, but was older than any of the statutes that are cited in this case.

In the case of *Emerson v. Hall*, reported in 13 Peters, 409, and decided long before the court of claims was established, or any general provision made for the bringing of suits against the United States, it was held that claims against the government are none the less legal or equitable because they cannot be enforced by suit.

In the case of *United States v. Gill*, 20 Wallace, 517, it was held that where army officers, without express contract founded on advertisement, received hay into their custody and used and wasted the same, the government was chargeable with the value of the hay at the time it was received.

In the case of the *United States v. Great Falls Manufacturing Company*, 112 U. S. 645, it was held that where officers of the government, in that case with the sanction of congress, took private property for public use, there was an implied promise to make the required compensation.

The case of *Hall v. United States*, 92 U. S. 27, was one where, during the war, the government had seized certain cotton and had converted it into money, and the money was being claimed by two parties. The implied

obligation of the government to pay this money to the rightful owner was clearly recognized in the suit, and it was held:

"The United States have no interest in the controversy: The government is merely a fund-holder for the benefit of the one of the two other parties who shall succeed in the litigation."

Now if the facts of the case were such as to create an implied contract on the part of the government to return to Foreman this $1,500, what was there necessary to be done by him in order to entitle him to bring suit in the district court of Canadian county, exercising upon the cause presented the jurisdiction of a circuit court of the United States, concurrent with the court of claims under the act of 1887? That act created a "jurisdiction to hear and determine * * all claims founded upon * * any contract, express or implied, with the government of the United States;" and by the provision of the Organic Act referred to, this jurisdiction was vested in the district court of Canadian county.

The plaintiff's claim was one founded upon an implied contract of the government of the United States to return him his money upon its refusal to issue to him patent for this land. The act of 1880 authorized the secretary of the interior to return to the plaintiff this money upon his complying with certain conditions, but it did not require those conditions to be performed when making any other application than that contemplated in the section, and the one contemplated there was solely an application to the secretary.

The provision entailing these conditions was a wise one, and very important when applied to the action of the secretary of the interior in returning this money. The secretary, for that purpose, was performing an executive

function in paying out money in the hands of the government, and it was no doubt deemed important that when this money was paid out, all claims upon the fund, if any there might be, should be determined, as well as all claims upon the land, and that there should be no future litigation concerning either. The secretary for this purpose was not a judicial tribunal, he not being given power to hear and determine any controversy, but merely exercising an administrative or executive power to cancel this implied obligation of the government to the homestead entryman; and in such a case it was deemed important that the evidence on which the secretary might act should be prescribed, and that that evidence should be so clear as to conclusively show the right of the plaintiff to the money, and to save the government harmless against future liability, and to exempt it from future trouble and litigation. But such conditions were not prescribed in the establishment of the court of claims, or in the conferring of concurrent jurisdiction with the court of claims upon the circuit and district courts of the United States, within certain limits. These tribunals were all courts. They were given power to hear and determine certain controversies, and that power was so comprehensive that to the tribunal, and the litigants in it, was given ample opportunity to have presented every question affecting the right of the petitioner in court, and to demand judgment from the government, the party sued. Pleadings were contemplated, in which both issues of law and of fact might be joined, and everything presented which would go, on the one hand, to entitle the party to recover, or, on the other, to defeat his claim. And in such a legal battle it would certainly be far less important to establish what had been, or what might be shown, to the secretary of the interior in the application for repayment

by that officer, than to show the exact right, legal or just demand the litigant was making there against the government. In a court thus established, anything which the plaintiff might have been required to prove in a prescribed form before the secretary he would be appropriately required to establish by clear proof, in open court, in the presence of both parties, in order to entitle him to recover, and his failure so to do would lead him to defeat.

There is nothing in the act of 1887 which would make it necessary for the plaintiff to have taken the preliminary step insisted upon, in order to entitle him to sue in one or the other of the courts therein named; and we see no reason why it should be held, as a matter of law, to be a necessary prerequisite to the filing of his suit. If the plaintiff had two methods which he might pursue in his effort to collect this money, then we see no reason why the condition that was made entirely applicable to one method should be held as a necessary part, or rather a condition precedent, to the pursuing of the other. That the two methods exist we think is amply supported by authority.

In the case of *Smithmeyer v. United States*, 147 U. S. 342, the plaintiffs brought their action in the court of claims to recover compensation claimed to be due to them as architects upon the congressional library building. Congress had provided that the value of the plans for the building, together with other matters, might be "adjusted and determined by the secretary of the interior, to be paid out of the sums" appropriated for the erection of this building, and the payment of the various expenses therefor. It was claimed by the United States that the plaintiffs could not maintain their suit because they had not submitted their claim for adjustment to the

secretary of the interior, who had exclusive power, not only to make the award, but to pay the claim. The supreme court held:

"The purport of the act of 1888 seems to have been to provide a method of adjusting the claim, if the claimants so desired, without a suit. The claimants had a right to the additional method, but they could also waive its benefit. The general jurisdiction of the court of claims and the additional method of adjustment can both of them well stand together. (*De Groot v. United States,* 5 Wall. 419, 432; *Gordon v. United States,* 7 Wall. 188; *Henderson's Tobacco,* 11 Wall. 652; *Shutte v. Thompson,* 15 Wall. 151; *Bechtel v. United States,* 101 U. S. 597; *Campbell v. United States,* 107 U. S. 407; *Chew Heong v. United States,* 112 U. S. 536; *United States v. Great Falls Mfg. Co.* 112 U. S. 645; *United States v. Harmon, ante,* 268)."

In the case of *Emmons v. United States,* 42 Fed. Rep. 26, being a decision of Judge Hanford, delivered in the circuit court of the district of Oregon, in an action brought by Emmons to recover certain moneys which had been paid by three different entrymen for government lands, and where their entries had been subsequently canceled, Judge Hanford said, in reference to the claim of the government that the remedy provided by § 2362 of the Revised Statutes, and the act of June 16, 1880, which latter act provides in a more comprehensive manner for the same thing provided for in § 2362:

"But I do not agree that the remedial provisions of the act of 1887 can rightfully be so abridged by construction as to preclude the courts from taking cognizance of any case merely because, by another law, an officer of the executive branch of the government is authorized, though not compellable, to satisfy the claim by directing payment thereof. To so hold would practically nullify the statute in its entire scope."

17—v.

The United States attorney cites this case of *Emmons v. United States* in support of his contention that a surrender of the final certificate, and a presentation of a relinquishment to the secretary must be made before this suit can be brought. There is, indeed, much in the opinion which points to this view, although it is not definitely stated that a surrender of the certificate shall be made to the secretary of the interior, nor that a relinquishment shall be filed in that department before the suit is brought. That part of what is said on the subject in connection with the consideration of the act of June 16, 1880, is undoubtedly the law, for manifestly a party could not avail himself of the provisions of that act without complying with its conditions. But if the references to this subject by Judge Hanford mean that a surrender of the receiver's certificate and the execution of a relinquishment must be made to and filed with the secretary of the interior before suit can be brought in the circuit court, then we do not agree with the conclusions reached. We think that one of the most effectual ways for a party to relinquish his claim to a tract of government land on which his entry had already been canceled, would be to come into a court having jurisdiction to hear and determine everything pertaining to his right to recover the purchase money so paid by him, and ask its repayment. The determination of that question in his favor would certainly effectually preclude the possibility of his ever thereafter successfully asserting title to the land. And if in the consideration of such a case it should appear in proof that he had made any transfer that would affect his right to recover the money from the government, it would lead to a most certain denial of his suit.

What is said in the latter part of the case of *Emmons*

*v. United States* with reference to the surrender of the certificate, and making a relinquishment, we cannot consider as authority on this question, because it appears not to have been stated in answer to any question argued, and was made after it had been determined that the plaintiff could not recover because the act of 1887 did not authorize suits to be brought against the government by the assignee of a claim. It being, then, unnecessary to a determination of that case, we cannot consider it as a reason why we should change the views which we have deliberately reached after a careful consideration of the statutes and the decisions of the United States supreme court bearing on the question.

It is urged on behalf of the United States that the plaintiff had no right to put the government to the trouble and expense of this litigation, and that this might have been saved by an application to the secretary of the interior in the manner provided. In answer to this it may be said that we cannot see wherein it is the fault of the plaintiff that the government has been put to any expense or to any trouble inconsistent with due attention to important public affairs. Section 15 of the act of 1887 referred to, provides:

"If the government of the United States shall put in issue the right of the plaintiff to recover, the court may, in its discretion, allow costs to the prevailing party from the time of joining such issue. Such costs, however, shall include only what is actually incurred for witnesses, and for summoning the same, and fees paid to the clerk of the court."

It will be seen that the plaintiff in this action could have recovered no costs, unless the government had made an issue on his right to recover. The facts pertaining to his right to the repayment of this money were all

admitted, the only issue made being upon the question of his application to the secretary of the interior for re-payment. Without such admissions, however, and without any pleadings having been filed, it was, under the latter part of § 6 of this act of 1887, necessary for the plaintiff to establish all the facts necessary to entitle him to recover this money by proof satisfactory to the court. There is no argument, then, in favor of extending the requirements of the act of 1880 to a case like this on the ground of saving expense to the government.

The judgment of the court below is affirmed.

All the Justices concurring.