UNITED STATES v. DICKSON et al.   SAME v. ENGLISH et al.   SAME v. GLENN et al.   SAME v. KOCH et al.

(Circuit Court, N. D. Georgia.   May 21, 1903.)

Nos. 1,686–1,689.

1. EMINENT DOMAIN—PROCEEDINGS BY UNITED STATES—DISMISSAL.

Proceedings by the United States to condemn land for a public building or other governmental purpose may be dismissed at any time before the actual acceptance of the property and payment therefor, until which time there is no "taking" of the property, and the United States is not subject to the payment of costs or damages to the landowners on such dismissal.

Proceedings to Condemn Real Estate for the Use of the United States.   On motion of district attorney to dismiss.

E. A. Angier, U. S. Atty., and Geo. L. Belland and C. D. Camp, Asst. U. S. Attys.

King, Spalding & Little, for defendants Dickson et al.
Hopkins & Son, for defendants English et al.
Slaton & Phillips and L. F. Garrard, for defendants Glenn et al.
Kontz & Austin, for remaining defendants.

PARDEE, Circuit Judge.   By an act of Congress approved June 6, 1902, it was provided as follows:

"United States post-office, court-house, and custom-house at Atlanta, Georgia, from four hundred and thirty two thousand three hundred and fifty-three dollars and forty cents to six hundred and two thousand three hundred and fifty-three dollars and forty cents, and the Secretary of the Treasury is hereby authorized, in his discretion, to expend not to exceed one hundred and seventy thousand dollars for the acquisition of additional land for the enlargement of the site heretofore acquired: provided, that the land so authorized to be acquired is the remainder of the block or square upon which the present post-office building is now located and can be secured within said limit of cost hereby fixed."   See Act June 6, 1902, c. 1036, 32 Stat. 311.

Under the authority thus granted, the above-entitled proceedings were instituted by the United States to condemn for public use "the remainder of the block or square upon which the present post-office building is located," and to ascertain the just damages to the owners thereof.   Pending these proceedings, which had been so far conducted as to show that the entire value of the property sought to be expropriated was largely in excess of the amount appropriated by the Congress to pay for the same, the Congress, in an act approved March 3, 1903, enacted as follows:

"Sec. 12.   That so much of the provisions of section one of the act entitled 'An act to increase the limit of cost of certain public buildings, to authorize the purchase of sites for public buildings, to authorize the erection and completion of public buildings, and for other purposes,' approved June sixth, nineteen hundred and two, as relates to the United States post-office, court-house, and custom-house at Atlanta, Georgia, be, and the same is hereby, amended to read as follows: ' That the Secretary of the Treasury be, and he is hereby, authorized to acquire, by purchase, condemnation, or otherwise, in the city

¶ 1. See Eminent Domain, vol. 18, Cent. Dig. § 654.

of Atlanta, Georgia, a site upon which to erect a United States post-office, custom-house, and court-house building, said site to consist of an entire block or square of ground, bounded on each side by a street, the limit of cost of site to be two hundred thousand dollars." See Act March 3, 1903, c. 1011, 32 Stat. 1211.

The last section of the said act provides that "all acts or parts of acts in conflict are repealed." 32 Stat. 1213.

In addition to the repealing act, it is to be noticed that the last statute is an amendment and re-enactment of the former statute in such terms that the former statute is necessarily superseded and annulled. The effect of this last statute is unquestionably to take away all authority on the part of the Secretary of the Treasury to acquire for the United States, by purchase or otherwise, "the remainder of the block or square upon which the present post-office is now located," to expropriate which the proceedings above entitled were instituted, thus operating a legislative abatement of the same. Aside from this, even if the last statute had not been enacted, it seems clear, on general principles, that the United States would have authority at any stage in these proceedings before the actual acceptance of the property and payment of the value to discontinue the same. It is the universally conceded right of every plaintiff to dismiss his suit whenever he sees fit, unless some propounded interests of the defendants should be affected. In these cases, appraisers appointed under the practice in the state of Georgia returned a much larger value for the property than the United States had ever expressed a willingness to pay. No physical interference has been made with the property, nor has there been any "taking" of the same in any legal sense; and unless, in some way unknown to the court, the United States can be compelled to take property at the owners' valuation, it is perfectly plain that these suits form no exception to the general rule.

Counsel who have opposed the dismissal asked for by the District Attorney are referred to Garrison v. City of New York, 21 Wall. 196, 22 L. Ed. 612, and Bauman v. Ross, 167 U. S. 599, 17 Sup. Ct. 966, 42 L. Ed. 270, where somewhat similar questions are considered.

I find nothing in the brief filed affecting the conclusions herein expressed.

In the absence of a statute authorizing the same, the courts of the United States do not give judgment against the United States for costs. United States v. Barker, 2 Wheat. 395, 4 L. Ed. 271; Pine River Logging Co. v. United States, 186 U. S. 296, 22 Sup. Ct. 920, 46 L. Ed. 1164.

The motion to dismiss is granted.