## S. M. KAŇAKANUI, WILLIAM R. CASTLE, and WILLIAM R. CASTLE AS TRUSTEE FOR SAID S. M. KAŇAKANUI v. UNITED STATES OF AMERICA.

### December 9, 1916

*Eminent domain—Abandonment of proceedings—Suit against government for resultant damages to property-owner:* The United States prosecuted proceedings for condemnation of lands to a judgment of condemnation and valuation, which provided in accordance with the laws of Hawaii that upon payment of the damages title should vest in the government. Over two years passed without such payment, and the property owners, respondents in the condemnation suit, sued the United States under the Tucker Act (24 Stat. 505) providing for suit on claims founded upon the Constitution and laws of the United States or upon contracts express or implied, or for damages in certain cases wherein the United States is suable, and under Revised Laws of Hawaii, 1905, sec. 505, providing that upon failure to pay the fixed price within two years all rights under the judgment of condemnation shall be lost to the government and it shall be liable for respondents' costs, reasonable expenses and damages sustained by reason of the bringing of the action; the property owners claiming inter alia that the judgment amounted to a taking of property for which compensation was due under the Constitution, Fifth Amendment. *Held,* that the suit against the United States was not well founded, for the reason, so far as concerns the local law, that the provision of section 505 as to liability is a matter of substantive law and not of procedure and is therefore not controlling under "conformity" statutes adopting local procedure, and, so far as concerns the Tucker Act, that there was no taking of property for which compensation is due or for which there is any contract express or implied for reimbursement, and that, so far as concerns any claim for damages, such claim as sounding in tort is expressly disallowed by that Act.

*Action under the Tucker Act, 24 Stat. 505, for damages resulting from abandonment of eminent domain proceedings:* On demurrer to complaint.

*D. L. Withington (Castle & Withington* with him) for plaintiffs.

*S. C. Huber,* U. S. District Attorney, for the United States.

CLEMONS, J.   This is an action against the United States to recover damages arising from proceedings to condemn certain land of the plaintiffs.   The complaint alleges that on September 7th, 1911, a decree was entered in those proceedings condemning the right, title and interest of the plaintiffs for the public use of the United States and ordering that their right, title and interest should vest in the United States upon the payment of an award of $5,000 damages; that no part of this award has been paid, and that the two years' period fixed by the Revised Laws of Hawaii, 1905, section 505 (Revised Laws of Hawaii, 1915, section 675) within which such award should be paid, has elapsed and under that statute all rights obtained by the United States in the above decree have been lost; and that "by reason of the law and particularly by reason of section 505 of the Revised Laws of Hawaii, 1905," the plaintiffs "are entitled to recover their costs of court, reasonable expenses and such damages as they have sustained by reason of the bringing of said action for condemnation," the specific amounts claimed being $1,100 for attorney's fees in the preparation and trial of the condemnation suit, $64.85 for witness fees and other expenses, $5,000 damages for the loss of the use of the condemned property, and interest on the award of $5,000 at seven per cent. per annum, from October 11th, 1911.   The latter date is thirty days (and a little more) after final judgment, evidently following the provision of section 505, aforesaid, which reads:

"The plaintiff must within two years after final judgment pay the amount assessed as compensation or damages; and upon failure to do so all rights which may have been obtained by such judgment shall be lost to the plaintiff; and if such judgment shall be delayed more than thirty days after final judgment, then interest shall be added at the rate of seven per cent. per annum.   Such payment shall be made to the clerk of the court rendering the judgment, who shall distribute the same in accordance with the order of

the court: If the plaintiff shall fail to make such payment as aforesaid, the defendant shall be entitled to recover his costs of court, reasonable expenses and such damages as may have been sustained by him by reason of the bringing of the action."

The present action is based, as plaintiffs claim, not only directly upon the local statute just quoted, but especially upon the Tucker Act, of March 3, 1887, 24 Stat. 505, sections 1 and 2, this court having under the latter section jurisdiction up to ten thousand dollars (see *United States v. Foreman,* 5 Okla. 237; *Johnson v. United States,* 6 Utah 403; *United States v. Johnson,* 140 U. S. 703), in case of:

"All claims founded upon the Constitution of the United States or any law of Congress, except for pensions, or upon any regulation of an executive department, or upon any contract, expressed or implied, with the government of the United States, or for damages, liquidated or unliquidated, in cases not sounding in tort, in respect of which claims the party would be entitled to redress against the United States either in a court of law, equity, or admiralty if the United States were suable." (Section 1).

The contention is that this action is within the Tucker Act, as being:

(a) A claim founded upon the Constitution of the United States;

(b) Under a law of Congress;

(c) On a contract express or implied.

Though, strictly, the complaint appears to have been drawn in theory on the basis of a right of action under section 505 of the Revised Laws of Hawaii, 1905, nevertheless the case will be considered as if the plaintiff's allegations were broad enough to unquestionably permit the claims under the Tucker Act, as above stated. And the plaintiffs might rely upon the comprehensive phrase "by reason of the law" in the allegation:

"That by reason of the law, and particularly by reason of section 505 of the Revised Laws of Hawaii, 1905," plaintiffs "are entitled to recover their costs of court, reason-

able expenses, and such damages as they have sustained by reason of a bringing of said action for condemnation." But this allegation is deemed appropriate for recovery under section 505 of the local law, and is not deemed an allegation of a claim based on a "taking of property" under the Constitution, or a claim based on a contract express or implied. The plaintiffs may amend their complaint, if they wish, so as to remove any question, especially as the evident desire of the United States Attorney is to have the case determined on broad and not technical grounds.

As to this action's being "under a law of Congress," the plaintiffs contend that section 505 of the Revised Laws of Hawaii, 1905, above quoted, is applicable because made so by a law of Congress, 26 Stat. 316, Act of August 18, 1890, as follows:

"And hereafter the Secretary of War may cause proceedings to be instituted, in the name of the United States, in any court having jurisdiction of such proceedings, for the acquirement, by condemnation, of any land, or right pertaining thereto, needed for the site, location, construction, or prosecution of work for fortifications and coast defenses, such proceedings to be prosecuted in accordance with the laws relating to suits for the condemnation of property of the States wherein the proceedings may be instituted."

The provision that "such proceedings" are "to be prosecuted" in accordance with the local eminent domain laws, is merely a provision adopting local procedure —a provision not needed in view of the "conformity" statute, Rev. Stat. sec. 914, *Judson v. United States,* 120 Fed. 637, 642-643; while, on the other hand, the provision of section 505 of the Revised Laws of Hawaii, 1905, allowing damages, expenses, and costs against the government is a provision of substantive law, rather than of procedure. The former has to do with remedy, with the means or method of enforcing rights; the latter creates rights in certain cases— rights which did not exist before, the government being in the absence of legislation immune from damages or costs.

*Carlisle v. Cooper,* 64 Fed. 472, 474, 475, (C. C. A., Brown, Circuit Justice, Wallace and Shipman, Circuit Judges); and, as to costs, *Downs v. Reno,* 124 Pac. 582, 583. In the Federal case just cited "a judgment for costs and allowances against the United States upon the dismissal of the condemnation proceedings under the Act of August 1, 1888, c. 728, 25 Stat. 357, was reversed because the court found no authority for awarding costs against the United States in such case in the act or in any other act", even in spite of the existence of the "conformity" statute, Rev. Stat. sec. 914. See *Treat v. Farmers' L. & T. Co.,* 185 Fed. 760, 763.

The contention, which is the main one, that the action is supported by "a claim founded upon the Constitution," a claim for "just compensation" for property taken for public use, has had full attention, and the court is impressed with the moral considerations which call for relief from the heavy expense, not to mention other disadvantages, brought upon the plantiffs by their forced participation in these condemnation proceedings; but, in spite of the able argument in the plaintiffs' behalf, and in spite of the recognized difficulties of the question arising out of the varied provisions of law in different jurisdictions, there is no conviction that there was a "taking" here or that the advantage acquired by the government was "property."

There was certainly no taking of the particular property sought to be condemned. The proceedings were only preliminary to a taking. See *United States v. Dickson,* 127 Fed. 775; *Lamb v. Schottler,* 54 Cal. 319, 327; *Stevens v. Borough of Danbury,* 22 Atl. 1071, 1072 (Conn.); *Carson v. City of Hartford,* 48 Conn. 68, 87, 88, and other cases discussed hereinbelow.

But the strongest argument in behalf of the complaint has been, that by the judgment of condemnation the government virtually acquired an option to purchase the plaintiff's interests for a certain sum of money, that this is a thing of value, property, for which under the Constitution

compensation should be paid.   And emphasis is laid on the damage suffered through the fact of the tying up of plaintiffs' property for two years,—the interference with the free use and disposition of it because of the so-called lien or cloud upon it resulting from this judgment by which under section 505 of the local laws, the government by paying the fixed price could at any time within two years acquire title.   It is apparent that the plaintiffs have suffered damage and have been put to expense by reason of the condemnation suit, and the judgment, under which the condemnation was to be consummated on payment of a fixed price, might be said to operate as a cloud on the title, but so, in a measure might the very institution and the carrying on of the proceedings, yet for none of these things is the government liable, unless that cloud results from a "taking" of property.   That, however, there here resulted no such legal cloud or lien, see *Lamb v. Schottler*, 54 Cal. 319, 327.

Was there a taking or acquiring of property by the government in the so-called "lien" or "option" resulting from the judgment of condemnation?   At first sight it might appear so, but on reflection it does not seem that the government has acquired anything new by this judgment: for it had at all times the right or power to acquire for public purposes that particular piece of land and all interests therein,—or in other words, the owners held it subject to that right or power, and the mere definite fixing of the value for condemnation purposes, the mere decree that the plaintiffs' property be condemned to be taken by the government at a certain price does not seem to be, or to amount to, the government's acquiring of a lien or option in any sense of the word.

By using the equivalent expression "right of purchase" instead of "option", the situation will be more clear.   The government had the right of purchase at the beginning and at all times, the main purpose of the proceedings (at least

after the determination of the necessity of the taking) being to fix the price; and yet that right of purchase,—in other words, the mere right of eminent domain,—could never in any true sense be called "property," the taking of which necessitates compensation.    Language of the Supreme Court of Connecticut, may be considered as tending to support the above view (*Carson v City of Hartford*, 48 Conn. 87-88):

"But the Council considered only—did not take.    By considering [after the condemnation proceedings had gone so far as to result in the assessment of damages] *no new relation between the city and the land came into being;* for at all times the land of the plaintiff and of every other owner is exposed to the right of the public to take it for public use.    By considering, the taking became more probable than before; but it remained only a possibility; his exclusive possession was not interrupted; the power to sell was not taken from him; his use was made less profitable only by his apprehension lest a possibility might ripen into a certainty."

And the Supreme Court of California has said, in *Lamb v. Schottler*, 54 Cal. 319, 327:

"When, in the exercise of its sovereign right of eminent domain, the State takes the private property of a person, he has but one right—and that is given him by the Constitution—the right to compensation before he is deprived of his property.    The right to take his property in no sense depends upon any contract between him and the public.    His assent is not required, and his protestations are of no avail.    But, under the Constitution his property cannot be taken until paid for.    Up to that time he holds it as he always held it, subject to the right of the State to take it for public use upon compensating him for it.    When so taken, the right to compensation, which the Constitution gives him, accrues.    That right then, for the first time, would become under the Constitution a vested one.    Up to that time he parts with nothing, and the public receives nothing.    Prior to that, no lien is impressed upon his property, or cloud cast upon his title, in consequence of any

preliminary proceedings. 'Nor indeed can it be said in any legal sense that the land has been taken, until the act has transpired which divests the title or subjects the land to the servitude. So long as the title remains in the individual, or the land remains uncharged by the servitude, there can have been no taking, under conditions which, as already stated, preclude the commission of a trespass.— Until the price has been ascertained, the government is not in a position to close the bargain; and when it is ascertained, if the sum is not satisfactory, the government may withdraw. The government is under no obligation to take the land if the terms when ascertained are not satisfactory.' (*Fox. v. W. P. R. R. Co.,* 31 Cal. 538.) We know of no method by which the government could have expressed its dissatisfaction with the price fixed upon the Laguna de la Merced more plainly and positively than by the repeal of the act which provided for its acquisition—and that, too, before any step subsequent to the ascertainment of the price had been taken. It is obvious that *the public had acquired no new right under these proceedings* before the repeal of the act, and quite as clear that the owners of the property had not."

The plaintiffs in the present case have been prejudiced, it is true, and the more prejudiced as the proceedings advanced to the judgment of condemnation and of valuation, but this is merely *damnum absque injuria.* The so-called taking here seems to be such only as was characterized by Mr. Justice Strong as resulting from "acts done in the proper exercise of governmental powers, and not directly encroaching upon private property, though their consequences may impair its use." He said in the case of *Transportation Co. v. Chicago,* 99 U. S. 635, 641, 642:

"Acts done in the proper exercise of governmental powers, and not directly encroaching upon private property, though their consequences may impair its use, are universally held not to be a taking within the meaning of the constitutional provision. They do not entitle the owner of such property to compensation from the State or its agents,

or give him any right of action. This is supported by an immense weight of authority.—The extremest qualification of the doctrine is to be found, perhaps, in *Pumpelly v. Green Bay Company*, 13 Wall. 166, and in *Eaton v. Boston, Concord & Montreal Railroad Co.*, 51 N. H. 504. In those cases it was held that permanent flooding of private property may be regarded as a 'taking.' In those cases there was a physical invasion of the real estate of the private owner, and a practical ouster of his possession. But in the present case there was no such invasion. No entry was made upon the plaintiff's lot. All that was done was to render for a time its use more inconvenient."

No authority has been found holding that it is not proper exercise of governmental powers to abandon a condemnation proceeding even after the fixing of the value of the property proposed to be taken—see Lewis, Em. Dom. 3rd ed., sec. 955 (656)—with the exception, of course, of certain decisions controlled by statute, as e. g., in *Plum v. City of Kansas*, 14 S. W. 657 (Mo.), hereinafter mentioned. And such exercise of governmental powers is still proper even though in a few States a remedy is afforded to reimburse the property-owner for damages, costs, etc., incurred. 10 R. C. L. 239, sec. 200. In the absence of such a statute, as section 505 of the local law, under the great weight of authority, if not all authority, a remedy is afforded only where there has been unreasonable delay or malice, but such remedy is expressly excluded by the Tucker Act as sounding in tort. See Id., 238, sec. 200, also *In re City of Pittsburg*, 90 Atl. (Pa.) 329, 331, col. 2, 332, holding that no such remedy exists apart from the statute. And see 2 Lewis, Em. Dom., 2d ed., 1693, sec. 957 (658).

The opinion in the case of *Stevens v. Borough of Danbury*, 22 Atl. 1071, 1072, 1073, throws some light on the question of what is a taking, holding, at page 1072, that the fixing of the amount to be paid if the land is taken, constitutes "only a proposed taking;" and it has the following,

at pages 1072-1073, on the matter of damages arising from inconvenience and uncertainty:

"There may be a hardship in compelling a land or mill-site owner to hold his property in entire uncertainty, after an assessment, whether it will be taken or not; but the inconvenience is of the same kind which attends all proceedings for the taking of land for public improvements, and which is incident to the ownership of property in a community, and especially in a city. This inconvenience was shown in a marked degree in the recent case of *Carson v. City of Hartford,* 48 Conn. 68, where it was held by the court to give no right."

That there can be no recovery for the mere inconvenience, trouble and expense resulting from the condemnation proceedings, see also *United States v. Oregon R. & N. Co.,* 16 Fed. 524, 531; *McCready v. Rio Grande Western Ry. Co.,* 83 Pac. 331, 333 (Utah).

In the case of *Plum v. City of Kansas,* 14 S. W. 657 (Mo.), cited in behalf of the plaintiffs, the court says, at page 658:

"The issue of law here is whether or not interest runs upon the award of damages assessed as compensation for land taken for public use by the judgment of the circuit court, pursuant to the terms of the Kansas City charter of 1875, (Sess. Acts 1875, p. 244, art. 7.) The situation of the parties in interest relative to the subject of controversy is this: Neither the plaintiff nor the city was dissatisfied with the original award fixing the value of plaintiff's property, with a view to its appropriation to public use. The long delay in reaching the end of the condemnation case arose from the acts of other parties. During it the plaintiff remained in possession of the land, but his enjoyment and use thereof were not such as belonged to complete ownership. His tenure, then, might be characterized as a sort of base or qualified fee, liable to be determined at any moment by the issue of the appellate proceedings. He could not, with any degree of confidence, improve the property or make any but the most transient agreements for its use. He could not dispose of it except subject to the paramount public easement, which had become impressed

upon it.    So far as concerned his beneficial rights, as owner, the judgment of condemnation amount to the taking of the property for public use, and the price for such taking then became justly due him."

But this case is distinguished by the fact that there was no question, as here, of any compensation on account of abandoned proceedings, but under the Missouri statutes "the title to the land is thereby (by the judgment of condemnation) vested in the city for public purposes," Id., col. 2, and such a judgment is differentiated from judgments "under statutes making them merely tentative, or expressly or impliedly postponing their final effect," Id., page 659, col. 1.

The cited case of *City of St. Louis v. Hill,* 22 S. W. 861 (Mo.) involved an undoubted taking, an invasion of property rights in the fixing of a building line which prevented the owner from building on a strip of land forty feet wide. The following language quoted in plaintiffs' brief has, therefore, no application here, Id., page 862:

"Property, then, in a determinate object, is composed of certain constituent elements, to wit, the unrestricted right to use, enjoyment and disposal of that object.    It follows from this premise that anything which destroys or subverts any of the essential elements aforesaid is a taking or destruction pro tanto of property, though the possession and power of disposal of the land remain undisturbed, and though there be no actual or physical invasion of the locus in quo."

If under that language what was done in the case at bar was a taking, then equally well would the mere institution of the proceedings be a taking, for in the latter case, though in a lesser degree, the use and disposal of the plaintiffs' property was interfered with.    Such interference, as has been pointed out in the case of *Feiten v. City of Milwaukee,* 2 N. W. 1148, 1151 (Wis.), would result from an ordinary action of ejectment. and yet in such case there could not be said to be a taking any more than here.

As to the suggestion of the opinion in the case of *Shoe-maker v. United States,* 147 U. S. 282, 321, upon which the plaintiffs rely, that the assessment of damages in eminent domain presumably includes certain incidental damages such as are here complained of, and that if the proceedings are abandoned there should be compensation to cover such damages, it is enough to say that, under the general expression of the authorities, the right to abandon without liability to pay the damages awarded necessarily means the right to abandon without payment of any of the included elements of damage.

"The weight of authority undoubtedly is that, in the absence of statutory provisions on the question, the effect of proceedings for condemnation is simply to fix the price at which the party condemning can take the property sought, and that even after condemnation or judgment the purpose of taking the property may be abandoned without incurring any liability to pay the damages awarded." Lewis, Em. Dom., 3rd ed., sec. 955 (656).

There is known to us no decision covering the exact question, i. e., no decision in which the acquisition of a so-called "option" or "right of purchase" or "lien" is considered. In *United States v. Dickson,* 127 Fed. 774, 775, Circuit Judge Pardee went so far as to say, that where "appraisers appointed under the practice in the State of Georgia returned a much larger value for the property than the United States had ever expressed a willingness to pay," and "no physical interference had been made with the property," there had not "been any 'taking' of the same in any legal sense." But this is only an opinion of no taking of the property sought to be condemned, and not an opinion of no incidental taking of any property, as, e. g., an option as above. In that case a motion of the government to dismiss the condemnation suit was maintained, it appearing that an intervening Act of Congress had operated as a legislative abatement of the

proceedings *Carson v. City of Hartford,* 48 Conn. 68, is perhaps more in point. There an assessment of damages had been made as to property proposed to be condemned for a public street. After proceedings had pended for over three years, the city council voted to abandon the public improvement which required the above property,—and under the city ordinance relating to the opening of streets, it had the right of abandonment, though that fact would not seem to distinguish the case, for if the power of the city to purchase at an assessed price is an "option" or "property," it is, so long as it lasts, no less so in spite of the final right of non-exercise of this option. The court says, pages 87-88, in the context of what has already been quoted above:

"As we have said that no way was laid out, the court must stand upon the proposition that if the council considers, for any period however brief, the matter of laying out a way, and a provisional award of damages is made to an owner of land if it shall be taken, and he is delayed thereby in the sale, or omits to make profit by the use of it, the city is responsible in damages.

"But, the council considered only—did not take. By considering no new relation between the city and the land came into being; for at all times the land of the plaintiff and of every other owner is exposed to the right of the public to take it for public use. By considering, the taking became more probable than before; but it remained only a possibility; his exclusive possession was not interrupted; the power to sell was not taken away from him; his use was made less profitable only by his apprehension lest a possibility might ripen into a certainty."

Adverting to cases cited in support of the claim of damages, the court observed, at page 89, "these cases do not determine the law of an instance of a contemplated but unaccomplished taking for public use." Speaking of the case of *Pumpelly v. Green Bay Co.,* 13 Wall. 166, in which the defendant flowed the plaintiff's land without compensation, and of other cases, it is said, at page 88, "Practically each of these acts was a taking of land, was the actual ex-

pulsion and exclusion of the owner from it by force." And of another line of cases, it is said, at page 91, "These again are trespasses, and, as we have said, furnish no precedent for making good to a land-owner profits which he omitted to make because of his belief that the city would take his land."

There are numerous State cases, notably in Maryland courts, holding that where the proceedings are not instituted in good faith, or are kept alive for an unreasonable length of time, and finally abandoned, the owner is entitled to be compensated for his expenses and loss. 10 R. C. L. 238, sec. 200. But, as above noted, an action for relief in such case sounds in tort (Id.) and is expressly excepted from the operation of the Tucker Act. By way of parenthesis, it may be said that, presumably, in the State cases, the States had by legislation consented to be sued for torts as well as on contracts. And most of these cases, and probably all of them so far as consequential injuries are concerned, are it seems grounded upon no idea of the taking of property but rather upon that of the damaging of property within provisions of law allowing compensation not only for taking but for damaging. See *Gibson v. United States,* 166 U. S. 269, 275, also *Bedford v. United States,* 192 U. S. 217, 225; 15 Cyc. 653-654, and see, e. g., *Winkelman v. City of Chicago,* 72 N. E. 1066 (Ill.), in which condemnation procedings, delayed for several years, were abandoned after more than 15 months from entry of judgment fixing the damages. And see *Black v. Mayor of Baltimore,* 50 Md. 235, 33 Am. Rep. 320, 323, holding that damages in such cases of wrong are not dependent upon whether the assessments of damages for the taking have been completed or not. See also *Shanfelter v. Mayor of Baltimore,* 31 Atl. 439 (Md.); also *Ford v. Board of Park Commissioners,* 126 N. W. 1030, 1032 (Ia.), which says that "perhaps as many, if not more, of the courts," have held that there are no damages even in cases unreasonably de-

layed, and which points out that it is by statute in many States that a right of action has been given.

The fact that it has been found necessary, as in Hawaii (section 505 of the local laws aforesaid), Massachusetts (*Downey v. Boston,* 101 Mass. 439), Minnesota (*Minnesota & N. W. Ry. v. Woodworth,* 32 Minn. 452, 21 N. W. 476) and elsewhere (10 R. C. L. 239, sec. 200), to enact legislation giving relief, and the fact that the cases in which relief is given in the absence of such legislation (but doubtless with legislation permitting the government to be sued for torts) are all cases (as the case at bar is not, under the complaint) of unreasonable delay or want of good faith, seem to militate in some degree against the contentions of the plaintiffs.

So far as the latter class of cases is concerned, it is obvious that any question of delay is quite independent of the question of the existence of a taking, and in such cases it is significant that recovery is placed on the ground of unreasonable delay and not on the ground of a taking.

The remedial character of the Tucker Act has been referred to. *United States v. Southern Pacific R. R. Co.,* 38 Fed. 55. That, however, results only in a liberal construction of the Act itself and in no way affects the construction of the word "taking" as used in the Constitution.

If there was not a taking of property, then there could be no basis for a contract express or implied and the claim based on such a contract would fall to the ground. *United States v. Lynah,* 188 U. S. 444, 462, 472; *United States v. Great Falls Mfg. Co.,* 112 U. S. 645, 656, 657; *Peabody v. United States,* 231 U. S. 530, 538, 539; *McCready v. Rio Grande Western Ry. Co.,* 83 Pac. 331, 333; *Lamb v. Schottler,* 56 Cal. 319, 328.

The conclusion from the foregoing considerations, is that the demurrer should be sustained, and it is so ordered.

Pursuant to the suggestion above made, the complaint

may be amended *nunc pro tunc,* and an amended complaint should be filed, so that the case may be regarded as fully determined on its merits—particularly for the purposes of appeal.

*Affirmed,* Circuit Court of Appeals, Ninth Circuit, August 6, 1917.