[No. 6,944.]

# LAMB v. SCHOTTLER ET AL.

| 54 | 319 |
| 84 | 645 |
| 54 | 319 |
| 112 | 332 |
| 54 | 319 |
| 122 | 19 |

CERTIORARI—PLEADING—MULTIFARIOUSNESS.—An objection to a petition for a writ of *certiorari*, that it is multifarious, is addressed to the discretion of the Court.

ID.—The object of the writ of *certiorari* is to annul, and not to restrain; and in such proceedings the Court cannot take cognizance of things *in fieri*. *Held*, accordingly, that a resolution pending in the Board of Supervisors could not be reviewed in this proceeding.

ID.—SAN FRANCISCO—QUO WARRANTO.—Upon a writ of *certiorari* to the Board of Supervisors of San Francisco, and to the Board of Water Commissioners, (appointed under the Rogers Act): *Held*, that the Court could not in this proceeding, review a resolution of the latter Board to the effect that it was necessary for the City and County of San Francisco to acquire the Spring Valley Water Works, etc.; or the act of the Board in appointing Appraisers, or the act of the Board of Supervisors in confirming such appointment; none of these acts being *judicial* in their nature, and their being—with reference to the appointment of Appraisers—a plain, speedy, and adequate remedy under the Code of Civil Procedure, § 803.

ID.—In a proceeding for a writ of *certiorari*, the party or parties whose acts are the subject of a review should be before the Court. *Held*, accordingly, that the act of the Board of Appraisers, appointed under the Rogers Act, in making and filing an appraisement of the Laguna de la Merced, could not be reviewed under a writ of *certiorari*, directed to the County Clerk—as the custodian of the record of the proceedings of that Board, (and others)—but not to the Board itself.

ID.—REPEAL OF STATUTE—OBLIGATION OF CONTRACT—VESTED RIGHT.—The repeal of a statute effectually annuls all proceedings had under the act repealed, unless the obligation of a contract would thereby be impaired, or a vested right destroyed. *Held*, accordingly, that all the proceedings under the Rogers Act, above referred to, were annulled by the repeal of the act, and that therefore it would be neither necessary nor proper for the Court to proceed further with the case.

ID.—ID.—ID.—ID.—EMINENT DOMAIN.—The right of the State to take private property for public use in no sense depends upon any contract between the owner and the public. Nor is there any vested right to compensation, until the property is taken; nor is the Government under any obligation to take the property, if the terms, when ascertained, are not satisfactory.

*Robert Ash*, and *John F. Swift*, for the Plaintiff.

*William Irvine*, and *Frederick Hall*, for Defendants.

In bank, SHARPSTEIN, J.:

A motion to quash the writ of *certiorari* issued in this case has been argued and submitted. It is based on several grounds, one of which is that the petition for the writ is multifarious.

That it is, does not admit of argument. But that objection is addressed wholly to our discretion, and in the exercise of it in this case, we have concluded not to grant the motion on that ground. If many pleaders would give more heed to the requirement of the Code, that "the complaint must contain a statement of the facts constituting the cause of action in ordinary and concise language," it would conduce greatly toward simplifying and facilitating judicial proceedings. The remedy for a departure from that rule, if strictly administered in every case, might aggravate rather than alleviate the evil. For that reason courts are compelled to tolerate violations of the rule, even in cases where there does not seem to be any excuse for not observing it.

The writ which it is sought to have quashed, is directed, in accordance with the prayer of the petition, to twelve persons, who are alleged to constitute the Board of Supervisors of the City and County of San Francisco, and to the Mayor, Auditor, and District Attorney of said city and county, who are alleged to compose the Board of Water Commissioners thereof, and to the County Clerk of said city and county.

This proceeding is instituted for the purpose of having this Court determine : 1st. Whether the Board of Water Commissioners exceeded their jurisdiction in adopting a resolution on the 21st day of December, 1877, to the effect that it was necessary for said city and county to acquire the Spring Valley Water Works, the Laguna de la Merced, and the San Mateo Water Works. 2nd. Whether said Board of Water Commissioners exceeded their jurisdiction in appointing James R. Kelly, Patrick Crowley, and J. L. Meares, as Appraisers on behalf of said city and county, to appraise the values of said properties. 3rd. Whether said Board of Supervisors exceeded their jurisdiction in confirming, on the 15th day of December, 1879, said appointment. 4th. Whether said persons, so appointed as appraisers, and certain other persons selected by the owners of the Laguna de la Merced and by the County Judge of said city and county, exceeded their jurisdiction as a Board of Appraisers, in making and filing, on the 22nd day of December, 1879, an appraisement of the value of said Laguna de la Merced.

There are other acts and resolutions of said Boards of Supervisors and Water Commissioners set forth and referred to in said petition; but as with a single exception, they are claimed by the petitioner to support his theory in regard to the invalidity of the acts above specified, we will only now notice the exceptional act, which is alleged to be a resolution now pending in said Board of Supervisors. Upon well-settled principles we cannot in this proceeding take cognizance of things *in fieri.* The object of the proceeding is to annul, and not to restrain. For the latter purpose other writs have been provided.

The proceedings which are attacked by the petitioner rest for their sole authority upon an Act of the Legislature, approved March 27th, 1876, (Stats. 1875-6, p. 501,) and generally known as "The Rogers Act." It constitutes the Mayor, Auditor, and District Attorney, a Board of Water Commissioners, with certain powers, among which are those which they are alleged to have exercised in excess of their jurisdiction. These acts consist of the resolution that it is necessary to acquire certain water rights, and the appointment of three persons to appraise the value thereof. The resolution amounts to nothing more than the expression of an opinion, and is not judicial in any sense. It was not necessary to adopt it before proceeding to appoint appraisers, and the validity of that appointment, or of any subsequent proceeding, in no wise depended upon the adoption of any such resolution. We have said that it was not judicial, and we may safely add that it was not even official. It is without force or effect, and no one can be interested in having it annulled or affirmed. The act of appointing Appraisers cannot be reviewed in this proceeding. It was purely ministerial or executive, and even if it were not, and the appointment was without authority, the law has provided a "plain, speedy, and adequate remedy" "against any person who usurps, intrudes into, or unlawfully holds or exercises any public office." (Code Civ. Proc. 803.) Neither can the action of the Board of Supervisors, in approving the appointment of said Appraisers, be reviewed in this proceeding. It was ministerial—or, perhaps, more properly speaking, executive—in its character.

The writ was prayed for against, and directed to, the County

Clerk, as the custodian of the record of the proceedings of the Board of Appraisers. If the writ was properly issued, it was properly, if not necessarily, directed to him.

The writ was not prayed for as against, nor was it directed to, the Board of Appraisers, whose acts it is sought to have reviewed in this proceeding. If it was necessary to direct it to any of the boards or officers specified in the petition, other than the County Clerk, it was necessary to direct it to the Board of Appraisers, in order to authorize a review of its proceedings, which, according to our view of the matter, are the only ones specified in the petition which we could review upon *certiorari.*

The provision that the "writ may be directed to the inferior board, tribunal, or officer, or other person having the custody of the record or proceedings to be certified," is not altogether free of ambiguity. It is our opinion, however, that the party or parties whose acts are the subject of review should be before the Court. And § 1,071 of the Code of Civil Procedure seems to contemplate a service upon all whose proceedings are to be reviewed, by providing that they may be required to desist from further proceedings in the meantime.

But the petitioner maintains that the proceedings of this last-named board, as well as of the other boards, have been annulled by competent authority. If upon an examination of the facts which he alleges in support of this theory, we shall be led to the same conclusion, it will not be necessary or proper for this Court to proceed any further in the case. The proceedings upon *certiorari* are not in the nature of a *post-mortem* examination. If there is nothing to annul, there is nothing for this Court to act upon in this proceeding. One allegation is, that on the 23rd day of January, 1880, the Legislature of this State repealed the Rogers Act, "and ended and terminated all rights, authority, and powers under the same." In *Key* v. *Goodwin,* 4 Moore & Payne, Mr. Justice Tindal said: "The effect of a repealing I take to be to obliterate the statute repealed as completely, from the records of Parliament, as if it had never passed, and that it must be considered as a law that had never existed, except for the purpose of those actions or suits which were commenced, prosecuted, and concluded while it was an existing law." And

in *Surtees* v. *Ellison*, 4 Man. & Ryl. 586–588, Tenterden, C. J., said: "When an Act of Parliament is repealed, it must be considered the same as if it had never existed, except with reference to such parts as are saved by the repealing statute." Cowen, J., in *Butler* v. *Palmer*, 1 Hill, 324, says that such is undoubtedly the general rule. "The effects of the repeal," says Sedgwick, "when it is clear and absolute, are of a very sweeping character" (Sedg. on the Construction of Stat. and Const. Law, 108); "because the legislature, being in truth the sovereign power, is always of equal and always of absolute authority; it acknowledges no superior upon earth, which the prior legislature must have been, if its ordinances could bind a subsequent Parliament." (Cooley's Const. Lim., 153.)

This principle, although modified by the constitutional inhibition against passing laws impairing the obligations of contracts, is with that limitation applicable to American legislation. In *Bloomer* v. *Stally*, 5 McLean, 161, the Court say: "There is no mode by which a legislative act can be made irrepealable, except it assume the form and substance of a contract."

We are limited, by this motion to quash, to the consideration of those facts and those alone set forth in the petition. We are, and necessarily must be, oblivious to any and all other facts. Now, if all the persons, officers, and boards who were authorized to act in the matter of acquiring water rights under the Rogers Act, had proceeded in strict compliance with its provisions, and no attempt had been made by any of them to revoke or repeal any of their own acts, the petition shows that the last step taken by any of them previously to the repeal of the Rogers Act, was the filing of the Appraisers' report. Before another step was taken, the act was repealed. If any rights had become vested under the original act, the repeal of it could not take them away. For instance, if the owners of the land in this case had received the appraised value of it before the repeal of the act, they could not successfully resist the right of the city and county to take possession of it, on the ground that such possession was not taken before the repeal of the act. And if the city and county had taken actual possession of the premises and appropriated them to the uses contemplated by the act before its repeal, the

right of the owners to compensation would not be affected by the repeal. In other words, complete performance, by either party before the repeal, would have created a vested right in favor of the party so performing which no subsequent repeal could take away. The petition in this case does not show that upon either of these grounds any right under the act repealed vested in either party before its repeal.

*San Mateo Water Works* v. *Sharpstein,* 50 Cal. 284, established the rule in this State that private property cannot be taken for public use until paid for. The taking and payment must be simultaneous acts. That rule is now firmly imbedded in the Constitution. (Art. 1, § 14). It does not appear by the petition before us that the property has either been taken or paid for; and therefore it does not appear that there has been any performance on either side.

Upon facts analogous to those stated, as we understand them, there are several well-reasoned cases, which hold that no right would vest under the circumstances, which could be successfully prosecuted after the repeal of the act. To this effect is the case of *Hampton* v. *Commonwealth,* 19 Pa. St. 329. In that case, the Legislature of Pennsylvania provided for the extension of a public street, and that viewers should ascertain and determine the damages and benefits to property owners within the district interested in the extension, and to so apportion them, that the latter should pay the former, and that, as soon as the report of the viewers was confirmed by the Court, *the extension henceforth should be deemed and taken to be a lawful public street.* The viewers made their report, and it was confirmed by the Court, and the confirmation was upon *certiorari* approved by the Supreme Court. The owners of the property taken for the purpose of the extension accepted, as they were authorized to do, the judgments and liens upon the property reported to be benefited, as compensation for the property taken, and thereupon became entitled to process, in the nature of a *scire facias* upon a mortgage, for the collection of the amounts awarded them against those whose property had been benefited by the improvement. The action was prosecuted in the name of the Commonwealth for the use of Irwin and Tomlinson, who were entitled

to damages against Hampton, who had been adjudged liable to pay for benefits.   After all of the above steps had been taken, with the exception of the issuing of the *scire facias*, the act providing for the extension was repealed, and the *scire facias* was sued out after the repeal.  The plaintiff obtained judgment, from which an appeal was taken to the Supreme Court.  In the opinion delivered by Black, C. J., the effect of the repeal of the act before the *scire facias* issued is the only question considered, from which we infer that there was none other involved in the case.   He says: "This transaction is put by the Court of Common Pleas on the footing of a contract between the parties. There is no definition of a contract that will include it.   The State takes private property for public use in virtue of her right of eminent domain.   She is bound to pay for it, but instead of making compensation out of the public treasury, she in this case ordered it to be assessed on contiguous property, and this was an exercise of the taxing power.  It was all done by one act of the Legislature, and that act was repealed—the part which authorizes the taking of the property, the portion which gives the right of compensation, and that which imposes the tax.  The last was as clearly repealed as the rest."  And he concludes as follows : "The repeal of the law, at any time before the street was opened, rendered all the proceedings under it void from the beginning.   It is as if no such law had ever passed.   If the repeal had come after judgment rendered and after execution issued, it would have struck dead the process in the hands of the sheriff."

In *Butler* v. *Palmer*, 1 Hill, 324, Cowen, J., delivering the opinion of the Court, says: "The amount of the whole comes to this : that a repealing clause is such an express enactment as necessarily divests all inchoate rights which have arisen under the statute which it destroys.   These rights are but an incident of the statute, and fall with it, unless saved by express words in the repealing clause.   I know," he continues, "that rights of action, and other executory rights arising under a statute are said to be vested.   (*Couch* v. *Jeffries*, 4 Burr, 2,462; and *vide Beadleston* v. *Sprague*, 6 Johns. R. 101.)   They are so, and a subsequent statute ought not to repeal them; though it

may do so by express words, unless they amount to a contract within the meaning of the Constitution. But that being out of the way, and the statute being simply repealed, the very stock on which they were engrafted is cut down, and there is no rule of construction under which it can be saved."

*Harrington* v. *The County Commissioners of Berkshire,* 22 Pick. 363, is sometimes cited in support of the opposite doctrine. But that case did not involve the question of the effect of the repeal of a statute under which the highway had been laid out and the damages awarded. The local authorities, after proceeding that far, voluntarily abandoned the project. It was held under those circumstances that the owner was entitled to an order from them for the payment of his damages. *The People* v. *The Supervisors of Westchester County,* 4 Barb. 64, is more nearly in point, and militates to some extent against the doctrine laid down in *Hampton* v. *The Commonwealth* and *Butler* v. *Palmer, supra.* In *The People* v. *The Supervisors, supra,* Barculo, J., says in one part of his opinion: " Now as I view this subject, when the supervisors liquidated the amount of damages, the relators obtained a vested right to the sums awarded to them respectively." In another part of his opinion he lays some stress on the fact that the relators had removed their fences under the direction of commissioners appointed for that purpose before the repeal of the act. He admits that several cases seem to support the doctrine to some extent that the Legislature may change its intentions before the land is actually taken, and thus deprive the owner of the sum awarded him for damages. It was, however, held in *Williams* v. *The County Commissioners,* 35 Me. 345, that the repeal of an act which authorized a course of proceeding by a public officer, invalidated the proceedings, if unfinished, at whatever stage they had arrived. This is recognized as the prevailing doctrine in *Tivey* v. *The People,* 8 Mich. 128, and in numerous other cases.

As we have seen, this repeal effectually annulled all proceedings had under the act repealed, unless the obligation of a contract would thereby be impaired, or a vested right destroyed. If no such obligation or right had arisen under the act prior to its repeal, then this case must be treated as it would be if the

act had never existed. Upon this point no court or commentator has ever suggested a doubt.

A brief examination of the provisions of the act will be sufficient, we think, to satisfy any one, who has a clear conception of what constitutes a contract or creates a vested right, that neither exists in this case. The act provides for the taking of private property for public use. When, in the exercise of its sovereign right of eminent domain, the State takes the private property of a person, he has but one right—and that is given to him by the Constitution—the right to compensation before he is deprived of his property. The right to take his property in no sense depends upon any contract between him and the public. His assent is not required, and his protestations are of no avail. But, under the Constitution, his property cannot be taken until paid for. Up to that time he holds it as he always held it, subject to the right of the State to take it for public use upon compensating him for it. When so taken, the right to compensation, which the Constitution gives him, accrues. That right then, for the first time, would become under the Constitution a vested one. Up to that time he parts with nothing, and the public receives nothing. Prior to that, no lien is impressed upon his property, or cloud cast upon his title, in consequence of any preliminary proceedings. "Nor indeed can it be said in any legal sense that the land has been taken, until the act has transpired which divests the title or subjects the land to the servitude. So long as the title remains in the individual, or the land remains uncharged by the servitude, there can have been no taking, under conditions which, as already stated, preclude the commission of a trespass. * * * Until the price has been ascertained, the Government is not in a position to close the bargain; and when it is ascertained, if the sum is not satisfactory, the Government may withdraw. The Government is under no obligation to take the land if the terms when ascertained are not satisfactory." (*Fox* v. *W. P. R. R. Co.* 31 Cal. 538.). We know of no method by which the Government could have expressed its dissatisfaction with the price fixed upon the Laguna de la Merced more plainly and positively than by the repeal of the act which provided for its acquisition—and that, too, before any

step subsequent to the ascertainment of the price had been taken.    It is obvious that the public had acquired no new right under these proceedings before the repeal of the act, and quite as clear that the owners of the property had not.    Their right to compensation depended wholly upon the property being taken, and not upon any contract or obligation of the public to take it. And the repeal of the act divested the officer, whose sole authority to proceed in the matter rested upon it, of any power to either take or pay for the property.    The facts set forth in the petition lead irresistibly to this conclusion, and it would therefore be idle for the Court to attempt to reannul that which has already been annulled by competent authority.

Having arrived at this conclusion, it is unnecessary to consider any of the other grounds upon which it is urged that the writ should be quashed.

The motion to quash the writ is granted.

We concur.          McKEE, J., MYRICK, J., Ross, J.

I concur in the judgment on the ground last discussed in the opinion.          THORNTON, J.

I concur in the judgment quashing the writ.

MORRISON, C. J.

McKINSTRY, J., concurring:

I concur in the order.    I agree that it is not the office of *certiorari* to stay the passage of a resolution introduced and *now pending* in the Board of Supervisors, and that neither the act of the Commissioners in appointing Appraisers, nor of the Supervisors in ratifying the appointment, was a judicial act; and that *certiorari* can be employed only to review the judgment or determination of a court, board, or officer exercising judicial functions.    ( *Code Civ. Proc.* p. 1,068; *The S. V. W. W.* v. *Bryant,* 52 Cal. 132.)    The petition, therefore, contains no averment which can justify the issue of the writ, as against the parties who are made respondent in this proceeding.    It is not claimed that the County Clerk has been named a party for any other reason than because he is the immediate custodian of the record.    But whatever be the mode of *service,* the judg-

ment attacked cannot be *annulled or modified* unless the tribunal, or officer by whom it has been rendered, has been made a *party.* The officer, indeed, may·have no personal interest in sustaining his judgment or order, but the duty is imposed upon him of protecting his jurisdiction, and if he be denied a hearing, he may be shorn of his power, if not by collusion, yet by the failure to present the question as forcibly as it might have been presented.