SCHOOL BOARD OF CAROLINA *v.* SALDAÑA ET AL.

APPEAL from the District Court of San Juan, Section 1.

Nos. 164-204.—Decided April 22, 1908.

EXPROPRIATION—DECLARATION OF PUBLIC UTILITY.—DESCRIPTION OF LAND.—The laws at present in force upon this subject do not require that the land sought to be expropriated should be described in the declaration of public utility by the Executive Council.

ID.—FUNCTIONS OF THE EXECUTIVE COUNCIL—NECESSITY AND CONVENIENCE.— Under the existing laws it is not incumbent on the Executive Council, but it is on the school board, to determine the limits and situation, the convenience and necessity of expropriating any particular property for the construction of schoolhouses.

ID.—DUTIES OF THE SCHOOL BOARD—REQUISITES OF APPLICATION FOR CONDEMNATION.—According to section 5 of the expropriation act of March 12, 1903, the application in expropriation proceedings must describe the property, the names of the owners, their residences, the nature of their interests, the liens thereon if any, and the purpose to which the property is intended to be applied.

ID.—AMOUNT OFFERED BY PLAINTIFF.—It is unnecessary that the application in expropriation proceedings should state the amount which the appellant is ready to pay for the land sought to be expropriated.

ID.—FUNCTIONS OF THE JURY—MATTERS WHICH MAY BE CONSIDERED THEREBY.— The expropriation act does not confer upon the jury appointed in such cases any power other than to determine the amount of the indemnity to be paid to the owner of the land expropriated, and it cannot consider evidence tending to show that there is no necessity to expropriate a particular parcel of land.

ID.—APPEAL FROM THE VERDICT OF THE JURY TO THE DISTRICT COURT—QUESTIONS WHICH MAY BE RAISED ON APPEAL.—From the verdict of the jury in expropriation proceedings, an appeal may be taken to the district court, and in an appeal thus taken, although the law does not determine what questions may be considered, there is no doubt that, in accordance with the jurisprudence upon the subject, in such proceedings the only matters to be considered and decided are the necessity of the expropriation of the land involved, the

convenience and situation of the property for the purposes sought, and evidence may be introduced to show these things.

APPEAL TO THE SUPREME COURT.—According to section 18 of the expropriation act the judgment of a district court on appeal from the verdict of a jury is appealable to the Supreme Court only by reason of error of law.

ID.—QUESTIONS OF LAW AND OF FACT MAY BE CONSIDERED IN THE APPEAL TO THE DISTRICT COURT.—There is no doubt that the district court may decide on appeal all questions of fact or of law raised by the parties and if the ends of justice so require may deny expropriation of the property in question.

ID.—TRIAL DE NOVO BEFORE THE DISTRICT COURT.—On an appeal from the verdict of a jury, the district court must try the case *de novo,* the same as in cases on appeal from the municipal courts.

ID.—INDEMNITY FOR THE LAND EXPROPRIATED AND FOR DAMAGES AND INJURIES.— The owner of expropriated land is entitled not only to be indemnified for the value of the property but also for all the damages and injuries occasioned by the expropriation, and a verdict not including these matters is contrary to law.

ID.—INDEMNITY TO A LESSEE OF EXPROPRIATED PROPERTY.—Not only the owner, but the lessee as well, of an expropriated property is entitled to indemnity for damages and injuries occasioned by the expropriation of a property and of the lease, respectively.

The facts are stated in the opinion.

*Mr. Hernández López* for appellant.

*Mr. Eduardo Acuña* for respondent.

MR. JUSTICE MACLEARY delivered the opinion of the court.

This is a case involving the expropriation of an acre of land for the purpose of building a schoolhouse. It appears that on the 16th day of May, 1907, the Executive Council of Porto Rico, as a basis for this proceeding, passed the following preamble and resolution:

*Whereas,* The School Board of the Municipality of Carolina has petitioned the Executive Council for a declaration of public utility so that it may acquire the necessary land for the construction of a. schoolhouse in that municipality; and

*Whereas,* It appears that such work is of public interest and necessity;

*Therefore, be it resolved by the Executive Council of Porto Rico,* That the work above described is hereby declared to be of public utility for all legal purposes."

On the 28th of the same month the plaintiff filed a petition in the first section of the District Court of San Juan, setting

out the facts deemed necessary to justify the action, and asking that the court after proper proceedings to render a judgment vesting in the plaintiff the title to the acre of land described, or to order the formation of a jury to take action in conformity with the statute of expropriations.

The defendants José Esteban Saldaña and the Progreso Sugar Co. appeared by counsel and opposed the suit for expropriation filed by the School Board of Carolina, the said José Esteban Saldaña making his opposition not only verbally, but also in writing, on the grounds that the complaint did not allege the necessity for occupying the land to which the expropriation proceedings refer, and that the indemnity offered was not in accordance with the provisions of article 355 of the Civil Code of Porto Rico, since $100 was offered for the value of the land sought to be expropriated, but that nothing was offered for the damage caused by the expropriation to the defendant. Both defendants asked the judge not to admit or proceed with the complaint filed, in view of the defects therein contained. The court suspended the appearance in order to study the questions presented and to render his decision.

Some days afterwards, on June 8, the judge made an order, in which after a consideration of the fundamental questions involved, he ordered that the suspended proceedings be continued in order to proceed to the appointment of the jury. The said order reads as follows:

"This case involves the expropriation of an acre of land belonging to the defendant, Mr. Saldaña, which together with other lands he has leased to the other defendant, The Progreso Sugar Co., and which is sought for the purpose of constructing a public school in Carolina, which building has been declared to be a public utility, as well as the acquisition of the land necessary for such building.

"The defendants at the hearing to which they were cited to appear, have made opposition; the defendant Saldaña alleging that there are three other tracts of land upon which the building may be constructed

under better and more advantageous conditions, considering the object thereof, and for the public interest, and moreover, because only the value of the land, and no indemnity whatever is offered.    The other defendant also bases his contention on this last point.

"Neither the Civil Code, nor the law providing for expropriation proceedings, require that it be alleged or proved that the thing which is to be expropriated is most convenient for the petitioner.    It is left to the choice of the petitioner to elect the place which he deems most suitable to his purposes, in order to do the thing that is for the public interest, and his only obligation in such case is to indemnify the person whose property rights are so restricted.

"A person who obtains in his favor a declaration of public utility for the construction of any building, as in the present case, of a school, is the one called upon to select the most appropriate location for the purpose in view.    It is not incumbent upon defendants to show that such and such a tract of land is the best suited for the plaintiff's purposes; nor is it the court's province to decide whether or not there is any other place better suited to the fulfillment of the plaintiff's mission.

"The plaintiff is the one who must carry out his mission, and he, better than any one else, can select the place most suitable for the purposes in view; and therefore such designation must be made by him.

"So that the fact that the defendant, Mr. Saldaña, thinks that there is another parcel of land better adapted to the purposes of the petitioner, cannot be considered as a matter of opposition, nor therefore, as evidence, because in permitting such a thing the law of the 12th of March, 1903, would be violated.

"According to this law, the only object of the appearance prescribed therein, is to determine whether the plaintiff and defendants can reach an agreement, and if this is not obtained, then a jury is appointed to fix the value of the land which is to be expropriated, as the only thing incumbent upon the plaintiff is to pay for the land needed for the work.

"According to article 355 of the Civil Code, the indemnity for the property expropriated, includes not only the value of the land, but also the damages thereby caused.    And there having been no agreement in this case, the jurors must decide not only in regard to the value of the land, the expropriation of which is asked for, but also in regard to the amount of damage caused to the owner and the lessee,

everything included within the meaning of the word indemnity in this case.

"The fact that the petitioner has stated that he is willing to pay the price of the land without saying anything in regard to the damages, is no reason why this proceeding should not continue, since if the jury finds such damages, the petitioner must pay the amount thereof, together with the value of the land, and if they should not do so, the expropriation proceedings would be without effect, and the defendants would suffer no restriction of their rights.

"For these reasons, in view of the opposition of the defendants, which caused the failure to effect an agreement, it is hereby

"*Ordered,* That a jury be constituted to be composed of five persons possessing the qualifications required by law, and that the interested parties be cited to appear at the office of the judge of this court on the 13th instant at 9 o'clock in the morning to witness the drawing of the said jury, and that the jurors so elected be notified."

The 13th day of the month was set for the continuation of the proceeding, and before the formation of the jury, the defendant José Esteban Saldaña, through his counsel, took an appeal from the decision of the judge of the court made on the eighth instant, ordering that the appearance be continued. And at this time defendant presented a matter for the decision of the court, requesting that all further proceedings in the case be stopped until the appeal taken from the order of the eighth instant be decided by the Supreme Court, and the court denied this request without prejudice to the right of defendant to prosecute his appeal and that the same pursue the regular legal course. To this ruling the defendant entered an exception on the ground that the decision appealed from prejudged questions were fundamental and constituted a transgression of authority on the part of the judge rendering the same, as section 12 of the law of expropriation does not authorize the judge to render decisions of that character, which should be reserved until the case comes up on appeal to the district court, in accordance with the provisions of section 18 of the said law.

In accordance with the order made on the eighth a jury was selected on the 13th in conformity with law; and on the 29th of June they returned the following verdict:

"We declare: That we have met in the ward of 'Martin González,' town of Carolina, on the property involved in the above-styled case, and made an examination of the land, as well as the topography thereof; that we have heard the evidence offered by both parties on the hearing of the case; that we consider the land sought to be expropriated as an extension of the said town, for which reason we appraise the said acre of land at the sum of $400."

From this verdict an appeal was taken to the district court in proper form on August 3, 1907.

Thereupon the trial court, on the 19th of September, giving the reasons for the action taken, filed the following "opinion":

"This is a proceeding brought by the plaintiff for the expropriation of an acre of land, against the defendants in this case, one of whom is the owner of the parcel of land involved, and the other is lessee of the same.

"After the proper proceedings had been had, the jury appointed unanimously declared that the land to be expropriated, or the parcel described in the complaint, is worth $400.

"An appeal has been taken from this decision of the jury by each of the defendants, the appeal having been heard with the attendance of the parties represented by their counsel, who presented their arguments before the court.

"The appeal of the defendant Saldaña is not based on the ground that the value fixed by the jury upon the land is unjust, but only that no evidence was heard on the point that the parcel of land sought to be expropriated is the most convenient place for the building which has been declared to be a public utility.

"This court has already decided (in regard to the exception taken by the said defendant to the complaint, based on the allegation that the complaint did not state facts sufficient to constitute a cause of action, because it was not necessary to occupy this land, there being other locations better suited for the construction of a schoolhouse such as is projected), that this claim could not be upheld.

"We are of opinion that the expropriation proceeding provided for by the law of the 12th of March, 1903 has no other purpose than to notify the defendants of the claim, and if they should be satisfied with the petition and the price, to render judgment conveying title to the property to the plaintiff, upon the payment of the price; and in case such an agreement should not be reached, to appoint a jury to determine the value of the thing to be expropriated, and thereafter to render a decision; but nothing more than this can be done, and it is not proper to prove or decide anything as to whether or not the work is to be a public utility, because this is the province of the Executive Council, which according to our law shall declare or refuse to declare a thing to be a public utility; nor is it proper, as we have already said in this same case, to prove or decide whether the land sought to be expropriated is the most convenient or not for carrying into effect the work declared to be a public utility, as the selection of the place is the province solely of the person who obtained such declaration, unless the concession itself designates the place which is to be used.

"Under such circumstances the jury should not hear evidence, nor give any opinion, in regard to whether the land under discussion is or is not a convenient location for the plaintiff.

"The other defendant, 'The Progreso Sugar Co.,' has appealed because the jurors decided in regard to the value of the land, but not in regard to the indemnity which should be awarded to the said company as lessee of that portion of land.

"The said company is the lessee of the land in question, with an unexpired contract inscribed in the register of property, and suit has been brought against it on account of the real right which it exercises over the land. Article 355 of the Civil Code says that an indemnity should be awarded to a person who is deprived of his property by a competent authority and for the public use, which includes not only the value of the thing of which the owner is deprived, but also a remuneration for damages occasioned him by depriving him of the property. So that, according to this provision of the law, the property owner is entitled to recover the value of the land and the damages arising from the obligatory conveyance of his property, and if such damages exist they should be paid to the owner of the property, and not to the lessee.

"Therefore, the jury not having designated any amount for damages to be paid to The Progreso Sugar Co. in nowise affects the validity of the action, because as has been said, the indemnity should include the value and the damages for the owner of the property; and the

owner, Mr. José E. Saldaña, does not attack the verdict on that ground. It not appearing that the jury was instructed by the judge to the effect that the word indemnity included those two points, and no award of damages having been made to the owner, it must be deduced that the jury found none.

"For these reasons the appeal must be dismissed."

On the next day the same judge rendered the following decision:

"The verdict of the jury appointed in this case having been presented to this court on the 29th of July last, and an appeal having been taken within five days thereafter by the defendants José E. Saldaña and The Progreso Sugar Co., and the 4th day of September having been set for the hearing of said appeal, the parties appeared, through their counsel, who argued the case orally.

"And the court taking into consideration the allegations, the verdict of the jury, and the arguments of counsel,

"*Decides:* That for the reasons set out in the opinion rendered in this case, the facts and the law are against the defendants, and in favor of the plaintiff the 'School Board of Carolina' which has the right:

"1st. To a judgment granting to the School Board of Carolina a title deed to the parcel of land composed of 1 *cuerda* bounded on the north by the highway leading from Carolina to Río Piedras, on the east by Teresa Wolkers, and on the south and west by José E. Saldaña, which parcel formed a part, and is segregated from, a tract of 292 *cuerdas* of land known as 'Aurora,' situated in the jurisdiction of Carolina, ward of Martín González, property of the said Saldaña, which is bounded on the north by the highway leading from Carolina to Río Piedras, on the south by the river and lands of Ramón H. Delgado, and on the west by Andrés Crosas.

"2d. That such grant of property shall be made on the payment by the plaintiff to the defendant Saldaña, the sum of $400, as the value given to said *cuerda* of land by the jury appointed in this case.

"3d. That the concession given in the paragraph numbered 1 of this decision is for the purpose of constructing a schoolhouse on the said land.

"4th. That the lease of The Progreso Sugar Co. shall be canceled on the books of the register of property in so far as the same refers to the said *cuerda* of land described and expropriated.

"5th. That this decision shall not be complied with until the value of the property, as fixed by the jury, has been paid to the owner of the property, and the costs of the court have been satisfied.

"The secretary will enter a judgment in accordance with this decision."

The following "judgment" was also rendered and entered by the secretary in accordance with the decision of the judge, and it appears as registered on the 25th of October, to wit:

"On the 8th of June, 1907, in chambers, the appearance of the parties provided for by law, was had in the above-mentioned case, each party attending through counsel, and stating that they were ready for the hearing. The plaintiff, through his attorney, read his petition, and the defendants, through their counsel, read their opposition to the said petition. In consequence, the judge ordered the formation of a jury in accordance with the law applicable to the case, which jury was duly drawn and constituted, and on the 29th of July, 1907, rendered the following verdict, which they filed with the secretary of the court, to wit:

" 'We the jury appointed to appraise the value of acre of land to be expropriated for building thereon a schoolhouse, in the ward of Martín González, of the municipal jurisdiction of Carolina, declare that we have met in the ward of "Martín González," Carolina, Porto Rico, on the property involved in the above-styled case, and made an examination of the land, as well as the topography thereof; that we have heard the evidence offered by both parties on the hearing of the case; that we consider the land sought to be expropriated as an extension of the said town, for which reason we appraise the said acre of land at the sum of $400.—San Juan, P. R., July 29, 1907. (Signed) José E. Marquez, R. García, Lucas Martínez, José Montesinos, Rafael Larroca.'

"On the 3d of August, 1907, the defendants gave due notice of appeal to this court from the said verdict, and on the 4th of September last the hearing in the said appeal was had in open court, the parties appearing through their counsel, and reiterating in the order above set out their allegations, and arguing the case orally, the appellants closing the debate.

"And the court, taking into consideration the said allegations, the verdict and the arguments, declares that the facts and the law are in favor of the plaintiff 'School Board of Carolina,' and therefore ad-

judges to the plaintiff the title to the property, consisting of 1 *cuerda* of land, bounded on the north by the highway leading from Carolina to Río Piedras, on the east by Teresa Wolkers, and on the south and west by José E. Saldaña, which parcel formed a part of and is segregated from another tract of 292 *cuerdas* known as 'Aurora' situated in the municipal jurisdiction of Carolina, ward of Martín González, the property of the defendant José E. Saldaña, bounded on the north by the highway from Carolina to Río Piedras, on the south by the river and lands of Ramón H. Delgado, on the east by lands of Andrés Crosas; it is ordered that the plaintiff have possession of the said land, and that this judgment be recorded in the register of property; and further, the cancellation of the lease of the defendant 'The Progreso Sugar Co.,' in so far as the same concerns the land expropriated herein, the compliance with the judgment being subject to the conditions that the plaintiff shall devote the land expropriated to the construction of a schoolhouse, in accordance with the resolution of the Executive Council dated 16th of May, 1907, and that the said plaintiff pay to the defendant José E. Saldaña the value of the land, according to the said verdict, together with the costs and the fees of the jurors.

"Pronounced in open court on the 21st of September, 1907, and registered on the 25th of October, 1907, *nunc pro tunc* the 23d of September."

From this decision and judgment an appeal was duly taken to this court. According to the statute this appeal must be decided here on errors of law only. On the 30th of October the transcript was filed in this court, and the case was duly heard later—that is to say, on the 17th of January last—and taken under consideration, and now stands for decision here.

There was an appeal from the decision of the court overruling the exceptions taken by the defendant, Saldaña, to the complaint; and it was brought up in a separate transcript under No. 164; afterwards the whole record was brought up, on appeal from the final judgment, and filed in this court under No. 204; and the two cases are now considered together. The first appeal was not properly taken, since the order made on the exceptions was not final; but it was the proper practice to reserve the exception taken and at the end of the litigation, on the rendition by the district court of the final judg-

ment, to bring the whole case including all interlocutory rulings, here on appeal, as was finally done.

On the 18th of November, 1907, the two cases were, on motion and agreement of counsel, consolidated, and afterwards, on the 17th of January, 1908, so heard and submitted for decision. So we may consider the two cases as if they were only one, which included both the ruling on the demurrer and the final judgment.

The several points presented for decision may be stated, in the language of the counsel for the appellants, as follows:

"1st. The declaration of a public utility must and does carry the declaration of the necessity of the expropriation of the real estate, made in a concrete and precise manner, in the presence and with the intervention of the party whose interests are prejudiced.

"2d. If the Executive Council is the body which makes the declaration, it must hear the property owner whose interests are prejudiced, in regard to the fact that the projected work does not require him to be deprived of his property. And in the case at bar, the Executive Council has not made such a declaration, and much less has it heard the owner of the property, as it does in all cases referred to in the last part of section 32 of our Organic Law.

"3d. And if the declaration of the Executive Council has made such an omission, the plaintiff should cure the defect in his complaint, in order that such necessity might be made the object of proof and discussion in the course of the expropriation proceeding.

"4th. The court in rendering the order appealed from, and which has been referred to, excluded that necessity, and reduced the question of expropriation to the mere appraisement of the thing expropriated.

"5th. The appellant believes that the doctrines that the school board may choose the land for the schoolhouse, by consulting only its own pleasure and convenience, and without demonstrating the necessity for the expropriation of the real estate, is entirely contrary to the spirit and the letter of article 355 of the Civil Code of Porto Rico.

"6th. Moreover, a complaint in an expropriation proceeding should not and cannot be admitted, if only the payment of the value of the thing expropriated is offered therein, as the said article 355 of the Civil Code of Porto Rico provides expressly that the indemnity shall include not only the value of the thing of which the owner is deprived,

but also a remuneration for damages which he may suffer by being deprived of the property.

"7th. The verdict, as well as the judgment of the district court, infringes article 355 of the Civil Code of Porto Rico, in declaring the propriety of an expropriation without proving the necessity and utility of carrying the same into effect on the thing expropriated."

During the last five years, since the passage of the act of the 12th of March, 1903, only four cases involving the expropriation of property have reached this court. They are the following:

*The Porto Rico R. R. Co.* v. *Ramón Valdés,* dismissed on the 12th day of May, 1905; *The Ponce & Guayama R. R. Co.* v. *Domingo Palmieri,* dismissed on the 2d of October, 1906; *The American R. R. Co. of P. R.* v. *José Mirandes Olivo et al.,* reversed on the 22d of June, 1907; *Cornelio Ruiz, Alcalde de Aguada,* v. *Eulogio Jiménez,* dismissed on the 7th of October, 1907.

In the only case among these in which an opinion was written the points involved in the case at bar are not touched. Then so far as this court is concerned in its decisions, this is a case of first impression.

The right of eminent domain—that is, the right to take private property for public use—is incident to the sovereignty of every government. The exercise of this power on the part of the government or its authority does not constitute a tort. This right of expropriation does not depend on any contract between the owner of the property taken and the government; but it is one of the inherent powers incidental to sovereignty as such. But in all free governments this high power must be exercised in accordance with law, and with a due regard to the rights of the owner to just compensation. And this great power should never be assumed by the sovereign, or its agent, except for the general welfare, and when the uses for which the property is to be taken are strictly public. But a special legislative act is not necessary in every particular case. The taking may be acomplished under the provisions of general

laws, and through the action of judicial tribunals. (*Merriman* v. *The United States,* 29 Ct. Cl. Rep., 250; *Cooper* v. *Williams,* 22 Am. Dec., 745; *Lamb* v. *Schottler,* 54 Cal., 319; *Johnson* v. *Joliet & Chicago R. R.,* 23 Ill., 131; *Backus* v. *Lebanon,* 35 Am. Dec., 466; see also notes on pp. 686 and 756 of 22 Am. Dec.)

But it is a well established principle of natural justice, which is embedded in the 5th Amendment to the Constitution of the United States, that "Private property shall not be taken for public use without just compensation." (Baker's Cons., p. 182.)   This same provision is contained in all the State constitutions as far as our observation extends.   These constitutional provisions are limitations upon the preexisting inherent right of eminent domain residing in the sovereign power.

It is well settled in the jurisprudence of the United States of America that the 5th Amendment to the Constitution thereof has reference solely to restraints on the General Government and its courts, and not to limitations on the powers of the several States. (*Ellenbecker* v. *District Court of Plymouth County,* 134, U. S., 31, and cases cited on p. 34 of that volume.)

But in the Civil Code of Porto Rico the same principle, as that contained in the 5th Amendment to the National Constitution, is expressed in slightly different words, in the chapter treating of the "Ownership of Property." The Code says:

"No person shall be deprived of his ownership except it be by a competent authority and for a justified purpose of public utility, and after having been properly indemnified.

"If this requirement has not first been complied with, the district courts shall protect and, in proper cases, replace the owner in possession of the expropriated property." (Civil Code of Porto Rico, sec. 355.)

The act of the Legislature providing for the condemnation of private property for public uses passed subsequently to the

Civil Code was not intended to repeal the section just quoted, since it especially refers to it with approval. (Sessions Acts of 1903, p. 50.)

We will endeavor to discuss and decide, under the laws governing the case, the questions presented in this appeal *seriatim.* The first may be stated thus:

Does the declaration of public utility by the Executive Council need to describe the particular property which is sought to be expropriated, or is it sufficient merely to specify the purpose for which such expropriation must be made? This question includes the first and second points presented by counsel for appellant, stated in slightly different words. The answer to the questions does not clearly appear from the rather obscure language used in the second section of the Expropriation Act. The erection of schoolhouses in general is one of the purposes for which private property may be taken, damaged or destroyed, which are enumerated in the third section of the law above mentioned. The resolution of the Executive Council passed on the 16th of May, 1907, merely declares that the acquisition of the necessary land whereon to construct a schoolhouse in the municipality of Carolina is "of public utility for all legal purposes." It does not attempt to designate the particular land which shall be acquired, and used for that purpose. Under existing statutes it did not need to do so. It may be questioned whether or not the Executive Council had the power under section two of the Expropriation Act to make the condemnation outright, and, if so, was it not a duty incumbent on that body? To these questions we must give a negative reply. And such is clearly the legislative construction given to the Expropriation Act by the amendatory law passed on March 12 last providing for a hearing in cases of condemnation and the procedure which must be taken by the council in such cases. Had the authority existed already in the Executive Council the amendment would have been unnecessary.

But if there were any doubt on the subject it would be resolved by reference to section 11 of the Codified School Law of Porto Rico, which reads:

"Section 11.—Whenever it shall become necessary for a school to acquire a site for a school building or for an addition to a schoolhouse site and the same cannot be acquired by agreement of sale with the owners thereof, the board is hereby given the right of eminent domain to proceed to condemn said property for school uses. The method employed in said condemnation proceedings shall be in accordance with the law of eminent domain in force." (Sessions Acts 1903, p. 64.)

Thus we see that the power is conferred on the school board and must be pursued in accordance with the law of eminent domain, which provides for a resort to the courts. The legislature, or in this case the Executive Council, could delegate to a subordinate body or board, or even to a private corporation, railroad or other, the duty and the right of selecting the land which it is necessary to take for the particular public use intended. In the case of laying out public roads, which is one of the most common instances of expropriation, the county courts, in the several States, are generally charged with the duty of establishing the routes, designating the lands necessary to be taken, and other incidental proceedings; and these courts in turn act through commissioners appointed for the purpose. Such has been the customary practice for centuries in New England, and other parts of the Union. (*Backus* v. *Lebanon,* 35 Am. Dec., 470; *Bloodgood* v. *M. & M. R. R. Co.,* 31 Am. Dec., 313; *Willgard* v. *Hamilton,* 30 Am. Dec., 195; *Beekman* v. *S. & S. R. R. Co.,* 22 Am. Dec., 679.)

Without going to the length which the trial court did in its order made on the 8th of June last, we can clearly say that it was not, under the existing law, incumbent on the Executive Council to consider the limits and situation of the exact and definite tract of land sought to expropriated and its suitability for the purpose indicated, much less the question of whether or not other tracts might not be better suited for the purpose,

nor the necessity of seizing that particular property for the public use. All these questions, after the public utility has been declared in general terms by the Executive Council, were required to be left to other agencies and tribunals to be decided as they might arise in the orderly course of the expropriation proceedings. It might have been wise to place this authority and responsibility on the Executive Council had Congress or the Legislature seen fit to do so.

Then is it necessary not only that the school board, in making its application for expropriation, should declare that the particular land designated is necessary for the public use in the construction of a public schoolhouse, but that the owners and lessees of the land should have the right to controvert that necessity in any way, such as by showing that there are other lands more suitable and appropriate for such purpose? This proposition covers the third, fourth and fifth points presented by counsel for the appellant for our consideration. To settle this we must refer to the Expropriation Act and also to section 355 of the Cicil Code, which laws define the rights of the parties and the proper procedure. The Civil Code merely limits the exercise of the power of eminent domain, as is done by constitutional provisions in the several States, by prescribing that the expropriation must be made by competent authority, for a justified purpose of public utility, and after proper indemnification and compensation. We must look to the law of 12th of March, 1903, for the procedure. Section 5 of that act sets forth the requisites of the application for condemnation, which are briefly a description of the property, the names of the owners, their residences and the nature of their interests, the liens theron if any, and the purpose to which the property is intended to be applied. The application may also state the sum of money which the applicant is ready to pay therefor. But he is not bound to make such an offer.

Sections 7, 8 and 9 of the act prescribe the method of citation of the parties interested, and sections 10 and 11 prescribe

the procedure in cases where the owners are satisfied with the petition and the price offered for the property. Section 12 of the Expropriation Act provides for cases in which the parties shall not agree to all or part of the proceedings; that is the appointment of a jury, or more properly a commission, of five persons whose duty it shall be "to fix the amount of the indemnity for the land condemned." No other duty is imposed on this so-called jury. It is true that in section 15 of the act the jury can summon witnesses and hear them, "hear the interested parties, and take such evidence offered by such parties as they may consider pertinent." No provision is made for any answer on the part of the owners, nor for the formation of any other issue than the amount of the indemnity for the land condemned. Then of course the evidence taken should be confined to this point only, and the jury cannot consider the question of whether or not there is other land more suitable to the purpose sought than that indicated, nor the necessity of the expropriation. After hearing such evidence and making an ocular inspection of the property the jury must render a verdict, as provided in section 16. This verdict is reached by a majority vote and must determine the "just indemnity" and be filed with the secretary of the court. From this decision an appeal may be taken within five days to the court itself appointing the jury—that is to say, the district court. Should no appeal be taken there is nothing left for the owner of the land to do but to accept the money awarded him by the jury and to comply with the judgment of expropriation. The district court is required on appeal, by section 18 of the act, "to take jurisdiction of the same and try and dispose of the same by "judgment" within a certain time.

Succeeding sections of the act provide for a deposit of money, the giving of bonds, the formal rendition of the judgment and the registration of the same in the register of property, etc. Nothing is said about the questions to be considered by the district court, on appeal, after taking jurisdiction, during the trial, or on disposition of the case. But has not the

court necessarily something to say in regard to questions thus brought before it, more than merely to determine the correctness of the amount fixed by the award of the jury? We think so. Mr. Freeman says in a monographic note to the case of *Beekman* v. *S. & S. R. R. Co.,* in 22 Am. Dec., 679, that:

"It is well settled that although the legislature must necessarily determine in the first instance whether the use for which they attempt to exercise the power is a public one or not, their determination is not final, but is subject to correction by the courts, who may undoubtedly declare the statute unconstitutional, if it shall clearly appear that the use for which it is proposed to authorize the taking of private property is in reality not public but private." (*Pittsburg* v. *Scott,* 1 Pa. St., 309; *Sadler* v. *Langham,* 34 Ala., 311; *Concord R. R. Co.* v. *Greely,* 17 N. H., 47; *New Central Coal Co.* v. *George's Creek Coal & Iron Co.,* 37 Md., 537; *Stockton, etc., R. R. Co.* v. *City of Stockton,* 41 Cal., 147; *Con. Channel c.* v. *Central P. R. R. Co.,* 51 Id., 269; *Coster* v. *Tide Water Co.,* 18 N. J., eq. (3 C. E. Green), 54; *County Court of St. Louis Co.* v. *Griswold,* 58 Mo., 175; *Tyler* v. *Beacher,* 44 Vt., 648; *S. C.,* 8 Am. Rep., 398; *Matter of Deansville Cemetery Association,* 66 N. Y., 569; *S. C.,* 23 Am. Rep., 86.)

If the court can determine such a question as this why not pass on the necessity of the taking and other questions of that nature?

If there is any time or opportunity for the owner of the property to be heard on the question of the necessity of the taking, and the existence of other property more convenient and suitable for the purpose for which condemnation is sought, than the property indicated in the application, this is the time and the opportunity. Surely the school board in this case, or a railroad company or other corporation in other cases, ought not to have the unquestioned right, from caprice, malice or other improper motive, to arbitrarily seize upon the property of a citizen and to condemn it when there is other property more convenient and suitable which could be had possibly for less money, and without resorting to expropriation proceedings.

It is held in California that this is a proper question for the courts to consider in such cases. Then evidence that there were other sites more suitable and convenient for the school-house should have been admitted in accordance with the following proposition:

"The exclusion of evidence for the defendants, to the effect that a much shorter route than that proposed had been surveyed, upon a better grade, through lands not thickly settled, is error. Such evidence, though not conclusive, is relevant to a material issue, and should be admitted, subject to plaintiff's right of rebuttal." (*City of Pasadena* v. *Stimson*, 91 Cal., 240.)

It may be said that in such cases the owner of the property sought to be thus taken, through improper motives, may prevent such a wrong by injunction proceedings, but is it necessary for him to do so when the matter is already before the very court which would have to issue the injunction? Would not the trial of the question in the condemnation proceeding avoid a multiplicity of suits and be more speedy and adequate remedy? To us it so appears.

But a doubt is suggested of the power of the court to go beyond the question of valuation without a special proceeding for that purpose. No such proceeding is authorized by the expropriation act or any other statute which has fallen under our observation. If we carefully examine section five of the expropriation act it will appear to our satisfaction that more questions than the mere valuation were submitted to the court. It is true that this question alone is submitted to the jury of valuation and by their verdict they must determine "the just indemnity which should be made to the person or persons whose lands have been condemned." (Sec. 16 Exp. Act.) This is all the jury has to do. But the court can clearly consider all the facts set out in the position which if controverted must be proven as alleged. When the whole Expropriation Act is considered in connection with section 353 of the

Civil Code any such doubt as the one suggested will disappear.

It is well said, in summing up an able and extensive monographic note, by Mr. Freeman that:

"At any rate, the rule is quite well settled that in the cases under consideration the determination of the necessity of taking a particular piece or a certain amount of land rests ultimately with the courts; citing *People* v. *Blake,* 19 Cal., 579; *Spring Valley W. W. Co.* v. *San Mateo W. W. Co.,* 64 Cal., 123, 28 Pac., 447; *Reed* v. *Louisville Bridge Co.,* 8 Bush, 69; *Tracy* v. *Elizabethtown, etc., R. R. Co.,* 80 Ky., 259; *St. Paul, etc., Ry. Co.* v. *State,* 34 Minn., 227, 25 N. W., 345; *Central R. R. Co.* v. *Pennsylvania Ry. Co.,* 31 N. J., Eq., 475; *Olmstead* v. *Proprietors of Morris Aqueduct,* 47 N. J. L., 303, 311; *Kountze* v. *Proprietors of Morris Aqueduct,* 58 N. J. L., 303, 33 Atl., 252; *Matter of New York Cent., etc., Ry. Co.,* 66 N. Y., 407; *Rensselaer, etc., Ry. Co.* v. *Davis,* 43 N. Y., 137; *South Carolina Ry. Co.* v. *Blake,* 9 Rich., 228; *Stearns* v. *City of Barre,* 73 Vt., 281, 87 Am. St. Rep., 721, 50 Atl., 1086; *Baltimore, etc., Ry. Co.* v. *Pittsburg, etc., Ry. Co.,* 17 W. Va., 812; *Wisconsin Cent. Ry. Co.* v. *Cornell University,* 52 Wis., 537, 8 N. W., 491; *Kaukauna Water Power Co.* v. *Green Bay, etc., Canal Co.,* 142 U. S., 254, 12 Sup. Ct. Rep., 173; and monographic note to *Lynch* v. *Forbes,* 42 Am. St. St., 406." (See note to *Chicago, etc., R. R. Co.* v. *Morehouse,* 88 Am. St. Rep., p. 946.)

And this is especially so in Porto Rico from the fact that under our statute an appeal is provided from the verdict of the jury to the consideration of the court, and the court is invested with jurisdiction and required to try and dispose of the case, and an appeal is given in the same act, section 18, from this judgment to the Supreme Court, "only by reason of an error of law." If the district court could only review the action of the jury in fixing the indemnity, its decision would involve merely questions of fact and there is no room for an error of law from which an appeal could be taken. The language of the act providing for an appeal from the verdict of the jury to the district court clearly contemplates more than a mere review of the valuation placed on the property and the fixing of damages incurred. Then it appears to us

that the district court in condemnation proceedings on appeal may consider all the questions of law and fact which may be presented by the parties, and, if the ends of justice require, may deny altogether the application for expropriation of the particular property described in the application.

Was it an error on the part of the district court to approve the award of the jury and to render the judgment of condemnation, when the jury by their verdict only fixed the value of the acre of land seized and did not pass upon the question of the damages and injuries caused to the owner and to the lessee by the deprivation of their property? Evidently the judge was of the opinion that the damages suffered by the owner should be included by the jury in their verdict, as is indicated by him in the eighth paragraph of his order rendered on the 8th of June last. But the jury did not do so; they merely said that they "appraise the said land at the sum of $400." Something was clearly left undone by the court below in deciding this appeal. These damages should have been included in the judgment of condemnation rendered by the district court on the trial *de novo* had on the appeal from the award made by the jury of valuation. Mr. Lewis in his work on Eminent Domain states the law as follows:

"Upon this point there is entire unanimity of opinion. The constitutional provision cannot be carried out, in its letter and spirit, by anything short of a just compensation for all the direct damages to the owner of the lot, confined to that lot, occasioned by the taking of this land. The paramount law intends that such owner, so far as that lot is in question, shall be put in as good a condition, pecuniarily, by a just compensation, as he would have been in if that lot of land had remained entire, as his own property. How much less is that lot and its erections, thereon remaining, worth to the owner, as property to be used or leased or sold the day after the part was taken, to be used for the purpose designed, than the whole lot intact was the day before such taking? In considering damages to the remainder, however, the whole remainder must be taken into account. If part is damaged and part benefited the question will be whether the whole is worth less than before the taking." (Lewis on Eminent Domain, sec. 464.)

The third and last paragraph of section 355 of the Civil Code of Porto Rico reads as follows:

"The indemnification shall comprise not only the value of the thing whereof the owner is deprived, but also a compensation for any damages and injuries which may be caused him by the deprivation of the property."

This law has been violated, or rather disregarded, by the jury in rendering their verdict, and by the district court in the judgment founded thereon. The reasons given by the district judge, for approving the verdict of the jury, in his opinion of the 11th of September last, are not considered by us to be sound. That court seems to be of the opinion that it was sitting as a court of cassation for the correction of errors which may have been made by the jury, when really its province was to try the case *de novo,* like an appeal from a municipal court, and to do justice between all parties to the proceeding.

The question may also be raised, as was done in the opinion of the trial court, as to the right of the lessee to indemnity in the expropriation proceeding, and should he not be relegated to his contract with the owner of the fee for the satisfaction of any damages that he may suffer by the vacation of his lease of the property taken away from him by the sovereign power. Section 355 of the Civil Code only mentions the owner and uses the term ownership in forbidding the taking without compensation. This seeming limitation does not arise from the text of our constitutional provisions which are clearly broad enough to include lessees and other persons holding less estates than the fee simple.

The New York Statute defines the term "owner" in condemnation proceedings to mean "all persons having any interest, estate or easement in the property to be taken, or any lien, charge or incumbrance thereon." (In re *Opening of Oneida St.,* 49 N. Y. Supp., 828.)

The Supreme Court of Illinois, some five years ago, interpreted the meaning of the word "owner" as follows:

"The word 'owner,' as applied to land, has no fixed meaning which can be declared to be applicable under all circumstances and as to any and every enactment. It usually denotes a fee simple estate. (*Wright* v. *Bennett,* 3 Scam., 258; *Illinois Mutual Fire Ins. Co.* v. *Marseilles Manf. Co.,* 1 Gilm., 236); but it has been defined to include one who has the usufruct, control or occupation of land with a claim of ownership, whether his interest be an absolute fee or a less estate. (17 Am. & Eng. Ency. of Law, 1st ed., 299, 300.) (*Coombes* v. *The People,* 198 Ill., 588.)

And the same construction was put on section 355 of the Civli Code under the Spanish Domination. Scaevola, in commenting on article 349 of the old Civil Code which is identical with section 355 of the present Code, says:

"A last question remains for us to consider, that which has reference to the entire section we have been examining. (Section 349 of Civil Code.) Does the forcible taking for reasons of public interest apply only when it refers to real estate? Are rights subject to forcible taking for the same reasons? Article 1 of the law in force on the 10th of January, 1879, mentions with sufficient clearness only real property. But in conformity with the law, as established in article 55, and in a manner more concrete in article 109 of the general regulations dictated for its extension, that can be classified as a case of forcible taking of a right which is done when lands necessary are temporarily occupied for the purposes of studying or for the exercising of professional functions for a short time, with the object of obtaining the data for the formation of a project or for the planning of a work with the establishment of stations and provisional roads, shops, warehouses, deposits of materials and any others necessary for works declared as of public utility, and finally with the extraction of material of all kinds necessary for the execution of the same works; whether the said materials are spread out on the property or whether they have to be formally developed.

"All these are true cases of the forcible taking of a right, because as is declared by article 109 of the above-mentioned regulation it signifies the imposition of a servitude and there is in a manner no full enjoyment or possession upon which such encumbrances are placed,

which fact deprives the owners of complete dominion and represents a forcible taking. This is the only case in which, according to the present legislation, on forcible taking, this thing happens with respect to rights because when the '*foral*' or '*censual*' estates are made subject to forcible taking by division of the direct and utilitarian ownership into '*foros*' and '*enficeutical censors*,' as must be understood with respect to the respective shares of the dominion it may well be said that there is a case of forcible taking, of the entire property even though it takes place with the respective, direct and beneficial agreement and compensation of the owners.

"Outside of the precepts of the special legislation upon forcible taking this lies not only respecting real rights but in certain cases upon personal property though this may not be due to the civil legislation but in conformity to the administration. Such special forcible taking occurs upon real rights for the redeeming of swamp lands which to a certain point may constitute a forcible taking of property and by virtue of the placing of a legal servitude of waterways, dikes, or watering places, canals, and other objects connected with lands situated on the banks of rivers or seas, which is treated in chapter 7 of title 2, and sections 1, 2, 3, and 4 of title 3 of the law in force regarding waters, in relation with the disposition of section 2, chapter 11, title 7, book 2, of the Civil Code in force, and that is also mentioned in section 3, chapter, title and book mentioned of the same Code. The modern current of authority is favorable to the idea of considering real rights subject to forcible taking; or better to estimating the faculty of compensating the persons in whose favor these rights exist. The project of the law of forcible taking of the 15th of June, 1891 (and the same of Sr. Monteros Ríos), says (article 59), that the proceedings of forcible taking shall be brought also against those persons who have any property rights upon the lands entered or recorded." (6 Scaevola Civil Code, pp. 238 *et seq.*, 2d ed.)

But we find from a careful examination of the Expropriation Act itself that such was the view taken by our Legislative Assembly. The petition is required to set forth not only the names of the respective owners of each parcel of land but "the nature of their respective interests."

The same act goes on to say: "If there are any liens upon such property created by judgment, or otherwise, the petition shall state the nature and amount of such liens and claims

and the names and residences of the persons in whose favor the same have been established, so far as they are known.'' (Sec. 5 of Expropriation Act.)

All such persons are required to be cited (section 7). And by section 9 of the same act it is provided that ''if during or before the hearing it shall be proven to the court or judge by any person that he has a right directly connected with the property which is the object of the condemnation proceedings, said person shall be heard, if he so requests.''

Why make such persons parties if the relief is confined solely to the owner of the fee simple title? Such was clearly not the view which the Legislature took of the words ''owner'' and ''ownership'' as used in the section 355 of the Civil Code.

It is an established rule in the exposition of statutes that the intention of the lawgiver is to be deduced from a view of the whole and of every part of a statute taken and compared together. (*1 Kent's Com.*, 6th Ed., 461-462; *Parkinson* v. *State,* 14 Md., 184; 74 Am. Dec., 529.)

. The great object of the maxims of interpretation is to discover the true intention of the law. (*1 Kent's Com.*, 6 Ed., 468; *Parkinson* v. *State,* 14 Md., 184; 74 Am. Dec., 529.)

The object of all rules of construction is to discover the true intent of the instrument construed. (*District of City of Dubuque* v. *City of Dubuque,* 7 Iowa, 262.)

Then it is clear that the lessee's rights should also be adjudicated and settled in this proceeding, and his indemnity paid before the property can be taken for the public use indicated.

The rights not only of the owner but of the lessee should have been considered in rendering such a judgment. The owner is entitled to the value of his land and to any damages caused by the taking; the lessee is entitled to the value of its lease upon the property taken, and to any damages suffered by it through the destruction of crops or otherwise. Mr.

Lewis also sets this question at rest, in section 483 of his work on Eminent Domain, which reads as follows:

"The lessee is entitled to such compensation as will make him whole in respect to his interest in the land, irrespective of any general benefits conferred by the taking."

Full and adequate compensation and indemnization must be first made to the owner, and any other parties having legal rights in the property, for all losses and damages suffered by them, before the land can be taken for public use. Such is the evident purpose and intention of the law. The 6th and 7th points made by the counsel for appellant as stated above and in the assigment of errors, contained in his brief, are well taken and must be sustained.

Since the submission of this case and during its consideration by this court the Legislative Assembly of Porto Rico has taken action on this subject and modified the statute law in regard thereto, correcting many of the defects appearing therein. (See Act of the 11th of March, 1908.)

It is unnecessary further to discuss or to analyze the various orders, decisions and opinions, rendered by the district judge in the course of these proceedings. Wherever they are at variance with this opinion they are deemed erroneous. For the errors incurred, as indicated, the judgment of the district court should be reversed and this case remanded to the said court for a new trial in accordance with the late act of the Assembly as far as applicable to the pending case, and the principles of the law herein set forth.

*Reversed.*

Chief Justice Quiñones and Justices Hernández, Figueras, and Wolf concurred.